HEUBLEIN, INC. *vs.* ALCOHOLIC BEVERAGES CONTROL
COMMISSION & others.[1]

Nos. 90-P-24 & 90-P-52.

Suffolk. March 20, 1991. - May 22, 1991.

Present: SMITH, PORADA, & GREENBERG, JJ.

*Alcoholic Liquors*, Wholesaler, Supplier. *Administrative Law*, Judicial re-
view, Substantial evidence. *Statute*, Construction.

Substantial evidence supported the finding of the Alcoholic Beverages
    Control Commission (ABCC) that a liquor importing corporation had
    assigned its distribution rights to a corporate distributor and, conse-
    quently, although the corporate distributor had not previously sold alco-
    holic liquors to a certain group of wholesalers, the ABCC correctly de-
    termined that the distributor succeeded to the importing corporation's
    obligations to the wholesalers under G. L. c. 138, § 25E; furthermore,
    in light of the ABCC's finding that there had been an assignment of the
    distribution rights, a separate finding by the ABCC that the transaction
    was made with the intent to circumvent § 25E was not required. [613-
    616]
The Alcoholic Beverages Control Commission did not abuse its discretion
    in determining that a certain liquor wholesaler had commenced a pro-
    ceeding before it within a reasonable time after a supplier's alleged vio-
    lation of G. L. c. 138, § 25E. [616]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 19, 1986.

The case was heard, on a master's report, by *Robert L.
Steadman*, J.

*Ellen S. Shapiro* for the plaintiff.

*Robert S. Frank, Jr.*, for Kelly-Dietrich, Inc., & another.

*Evan T. Lawson* (*William F. Coyne, Jr.*, with him) for
Charles Gilman & Sons & others.

---

[1] Capital Distributing Co., Inc., Kelly-Dietrich Inc., M.S. Walker, Inc.,
Ruby Wines, Inc., and Charles Gilman & Sons, Inc. Martignetti Grocery
Company, originally named as a defendant, was later released as a party.

*Douglas H. Wilkins*, Assistant Attorney General, for Alcoholic Beverages Control Commission.

*Kenneth H. Soble*, for M. S. Walker, Inc., was present but did not argue.

SMITH, J. Five liquor wholesalers (wholesalers),[2] all licensed under G. L. c. 138, § 18, commenced proceedings before the Alcoholic Beverages Control Commission (ABCC) against Austin-Nichols & Co., Inc. (Austin-Nichols), and Heublein, Inc. (Heublein). They claimed that Heublein was a sales agent for Austin-Nichols, a liquor importer, and had refused to sell certain alcoholic beverages to them in violation of G. L. c. 138, § 25E. That statute, recited in pertinent part in the margin,[3] "makes it an unfair trade practice for an importer, absent good cause, to refuse to sell to a wholesaler a brand item if the importer 'has made regular sales of such brand item [to the wholesaler] during a period of six months preceding any refusal to sell." *Pastene Wine & Spirits Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 612, 616-617 (1988). The ABCC ruled in favor of the wholesalers and ordered Heublein "to make sales in the regular course of busi-

---

[2] Charles Gilman & Sons, Inc. (Gilman), was not one of the wholesalers who originally commenced the proceedings against Heublein. Its application for relief was filed after the ABCC decision in the other cases. On Heublein's appeal, Gilman's case was consolidated with the others.

[3] General Laws c. 138, § 25E (1988 ed.), provides as follows: "It shall be an unfair trade practice and therefor[e] unlawful for any manufacturer, winegrower, farmer-brewer, importer or wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer, winegrower, farmer-brewer, importer or wholesaler has made regular sales of such brand item during a period of six months preceding any refusal to sell.

". . . .

"Good cause as used herein shall be limited to the following conduct:

"(a) disparagement of the product so as to impair the reputation of the brand owner or the brand name of any product,

"(b) unfair preferment in sales effort for brand items of a competitor,

"(c) failure to exercise best efforts in promoting the sale of any brand item,

"(d) engaging in improper or proscribed trade practices, or

"(e) failure to comply with the terms of sale agreed upon between supplier and wholesaler."

ness to . . . wholesalers of those products formerly provided to the . . . wholesalers by Austin-Nichols."

Heublein sought judicial review of the decisions in the Superior Court pursuant to G. L. c. 30A, § 14. A Superior Court judge referred the matters to a special master. After a hearing, the master concluded that the ABCC decisions were supported by substantial evidence and recommended that the decisions be affirmed. A Superior Court judge agreed with the master's recommendations and judgments were entered in favor of the wholesalers. Appeals from the judgments were consolidated in the Appeals Court. We affirm.

It is undisputed that Heublein had not previously sold alcoholic beverages to the wholesalers. Therefore, in order for the wholesalers to prevail, there must be some basis for imputing Austin-Nichols' § 25E obligations to Heublein. The ABCC ruled that Austin-Nichols had assigned its distribution rights to Heublein and, therefore, Heublein assumed Austin-Nichols, § 25 obligations. Heublein claims that the ABCC erred as matter of law because there was no finding by the ABCC that the transaction between Heublein and Austin-Nichols was for the purpose of circumventing § 25E. It argues that *Pastene Wine & Spirits Co.* v. *Alcoholic Bevs. Control Commn., supra,* controls the situation here.

In *Pastene*, Schieffelin & Co., a liquor importer, made regular sales of brand name alcoholic beverages to Pastene, a wholesaler. Moet-Hennessy, S.A., a French corporation, purchased Schieffelin's capital stock and later caused Schieffelin to be liquidated. Moet-Hennessy then refused to sell to Pastene. Pastene commenced proceedings before the ABCC, alleging that M-H U.S.A., a wholly-owned subsidiary of Moet-Hennessy, had violated G. L. c. 138, § 25E, by refusing to sell certain alcoholic beverages to it. The ABCC ruled against Pastene. On appeal, the court held that an importer who acquired and liquidated a corporate supplier did not succeed to the supplier's G. L. c. 138, § 25E, obligations where the former supplier was acquired and liquidated for reasons unrelated to the circumvention of § 25E. *Pastene Wine &*

*Spirits Co.* v. *Alcoholic Bevs. Control Commn., supra* at 618-619.

The decision in *Pastene*, however, does not control the situation here. In *Pastene*, the court was careful to distinguish its holding from those ABCC decisions where the commission had found that the original supplier either had entered into an agency relationship with the new supplier or had assigned its distribution rights to the latter. *Pastene Wine & Spirits Co., supra* at 618 n.5.[4] The court noted that, in those decisions, the ABCC ruled that the acquirer of the rights had assumed the existing § 25E obligations. Because no such findings were made by the ABCC in *Pastene*, the ABCC decisions were held by the court not to be applicable.

Here, the ABCC found that there had been an assignment of the distribution rights. We hold that as a result of that finding, the ABCC did not have to make a separate finding that the transaction was made with the intent to circumvent § 25E.

Heublein claims that the ABCC's finding that there was an assignment of distribution rights to it was not supported by substantial evidence. "Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6) (1986 ed.). "If there is such evidence, we affirm the agency's action even though we might have reached a different result if placed in the position of the agency." *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988).

In this matter, the record of the ABCC consists of statements of facts recited by counsel for Austin-Nichols and Heublein[5] and certain documentary material, including a let-

_____

[4] Indeed, in its footnote, one of the ABCC's decisions cited by the court as distinguishable from its main holding in *Pastene*, is one of the very cases that is the subject of this appeal. The ABCC's decision noted by the court is Kelly-Dietrich *vs.* Austin-Nichols.

[5] Over the objections of some of the wholesalers, the ABCC relied on oral representations of counsel for Austin-Nichols and Heublein. We were informed at oral argument that the ABCC often employs this practice in cases concerning G. L. c. 138, § 25E, obligations. In view of the substantial evidence test, it would be preferable that in those situations where testimony is not to be heard and no transcript is made of the oral represen-

ter dated August 8, 1985, in which Heublein informed the wholesalers that it would not sell Austin-Nichols' products to them. We summarize the facts.

Austin-Nichols, a subsidiary of Societe Pernod Ricard, is a French corporation which manufactures and sells Wild Turkey bourbon and Wild Turkey liquor. It also imported and resold certain other Pernod Ricard products.[6] For a number of years prior to August, 1985, Austin-Nichols sold Wild Turkey and other liquor products to the wholesalers, who, in turn, resold those products to alcoholic beverage retailers in Massachusetts.

On May 16, 1985, Heublein purchased Austin-Nichols' right to import the alcoholic beverages that Austin-Nichols had been distributing from its parent company. A new joint venture, owned seventy percent by Austin-Nichols and thirty percent by Heublein, would produce Wild Turkey. Austin-Nichols was not liquidated but continued to be active in the alcoholic beverage industry.

By letter dated August 8, 1985, Heublein notified the wholesalers that it would not sell the products to them. The letter stated:

> "Heublein, Inc. has reached an agreement to act in the United States as the *sole sales agent* for the products of Austin, Nichols & Company ("The Products").
>
> "It is our understanding that your firm has been a wholesaler for Austin Nichols. As such, you should be aware that the arrangements for sales agency referred to above are complete and The Products will now be sold by Heublein.
>
> "Heublein has decided after reviewing the Austin Nichols distribution system, that we do not desire to utilize your firm as a wholesaler of The Products. This decision

tations, the ABCC base its decisions on written stipulations rather than oral representations.

[6] Pernod, Bisquid cognac, and Mouquin brandy. The parties agreed that the decision with respect to Wild Turkey will govern the disposition of the other brands.

is effective immediately and we will not be making any further shipments to you . . . " (emphasis added).

Further, Heublein's counsel, in his recitation of the facts to the ABCC, repeatedly described the transaction as an "assignment" of products to Heublein.[7] On all of this evidence, the ABCC could fairly find that there had been an assignment of Austin-Nichols' distribution rights to Heublein.

Heublein argues also that "good cause" to terminate sales to a wholesaler, as stated in G. L. c. 138, § 25E, includes its business decision to refuse to sell to the wholesalers. We note that Heublein did not raise this issue below. Consequently, we decline to consider Heublein's claim here. *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn., supra* at 724. In any event, the statutory definition (§ 25E) of "good cause" is expressly confined to five types of conduct by a wholesaler and the "cause" put forth by Heublein is not one of them. See *Somerset Importers Ltd.* v. *Alcoholic Bevs. Control Commn.*, 28 Mass. App. Ct. 381, 387 (1990).

Finally, Heublein claims that Gilman, one of the wholesalers, forfeited its rights under § 25E because it did not file its appeal to the ABCC until approximately nine months after it had received its termination letter. The ABCC rejected Heublein's claim, holding that Gilman had not waived its rights and that Heublein was not prejudiced by the delay. The Superior Court also rejected Heublein's argument. It held that there was no statutory time limit on the bringing of an appeal before the ABCC and that the ABCC had some discretion in determining whether an appeal has been filed within a reasonable time. We agree. Here, there was no abuse of that discretion. We note that, contrary to Heublein's argument, the six-month period contained in § 25E has nothing to do with when an appeal must be filed with the ABCC.

*Judgments affirmed.*

---

[7] Local counsel for Heublein did not appear before the ABCC.