CAPITAL DISTRIBUTING COMPANY, INC. *vs.* HEUBLEIN, INC.

No. 98-P-1262.

Suffolk. December 17, 1999. - October 26, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

Further appellate review granted, 433 Mass. 1101 (2001).

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, Supplier, Wholesaler. *Administrative Law,* Judicial review, Substantial evidence, Agency's interpretation of statute.

Discussion of the standard of review of a decision by the Alcoholic Beverages Control Commission. [341-342]

Discussion of G. L. c. 138, § 25E, under which an alcoholic beverage producer commits an unfair trade practice by discontinuing without cause its relationship with an alcohol wholesaler. [342-343]

Where a national alcoholic beverage distributor acquired a producer and distributor of wines including the right to be the sole distributor of those wine products, G. L. c. 138, § 25E, was applicable in the circumstances and the purchasing distributor was required to continue to supply the Massachusetts wholesaler that had previously been supplied under agreement with the purchased distributor. [343-345]

CIVIL ACTION commenced in the Superior Court Department on February 28, 1996.

The case was heard by *David M. Roseman,* J.

*Joseph F. Hardcastle* for the plaintiff.

*J. Charles Mokriski* for the defendant.

*Louis A. Cassis,* for Wine and Spirits Wholesalers of Massachusetts, Inc., amicus curiae, submitted a brief.

GELINAS, J. We consider whether the Alcoholic Beverages Control Commission (ABCC) ruled correctly that, under G. L. c. 138, § 25E, Heublein, Inc.,[1] was required to sell certain alcoholic beverage products to Capital Distributing Company,

---

[1]Heublein, Inc., as of the May 7, 1998, filing of its joint stipulation of dismissal, has been known as UDV North America, Inc. However, for purposes of this opinion, we shall refer to UDV as Heublein.

Inc. (Capital).[2] Heublein expressly disclaimed acquisition of certain supplier obligations of Benziger Family Ranch Associates (Benziger) when Heublein purchased Benziger's Glen Ellen and M.G. Vallejo brand wines (products), certain physical assets used in making the wine, and other obligations and agreements. We determine that the ABCC ruled correctly, and we reverse the judgment of the Superior Court.

1. *Facts.* We take the facts, which are not in dispute, from the record before the ABCC which, under G. L. c. 30A, § 14(5), formed the sole basis for the Superior Court's review.

In September of 1993, Heublein, a national producer and supplier of alcoholic beverages, entered into a purchase and sale agreement with Benziger, a producer and distributor of wines, by which Heublein purchased, among other things, the rights to produce, distribute, and sell the products. The purchase price was approximately $135 to $140 million. The transaction, which closed on October 29, 1993, included between $15-$17 million of accounts receivable, including accounts receivable that Capital owed Benziger. Heublein hired roughly 170 of 220 Benziger employees related to the business; approximately fifty Benziger employees were laid off as a result of the transaction. Heublein also acquired physical equipment, inventory, bulk wine and grape supply contracts, trademarks and certain other accounts, contracts, and leases. Benziger remained in business, continuing to produce and sell its Imagery and Benziger brands and retaining all assets relating to the production of those wines.

Under the agreement, Benziger transferred to Heublein complete control over the manufacture, sale, and distribution of the products. The purchase and sale agreement contained a section listing the existing domestic distribution agreements between Benziger and wholesalers through whom it sold which would be transferred to Heublein. These distribution agreements were designated "assigned contracts." Capital and three other Massachusetts distributors were initially included in the list, but were crossed off prior to closing. In a later section of the agreement, § 1.09(b)(xiii), Heublein purported to exclude any obligation arising out of or relating to, any distributor or wholesaler agreements under which Benziger sold the products to wholesal-

---

[2]In the Superior Court action, Capital, Martignetti Grocery Company, Inc., Whitehall Company Ltd., Branded Liquors, Inc., and M.S. Walker, Inc., all Massachusetts licenced wholesalers, as well as the ABCC, were defendants. Only Capital appeals here.

ers in Massachusetts and in nine other States. Five wholesalers in Massachusetts were affected by this section of the contract. In his deposition, Heublein's senior vice president and general counsel explained that, although Heublein agreed to assume the great majority of Benziger's domestic distribution agreements, the company chose to exclude agreements in particular States, including Massachusetts, based on a review of wholesaler protection statutes in those States. G. L. 138, § 25E, is just such a statute.

Before the closing, on October 15, 1993, Heublein's vice president and general sales manager informed all distributors of the products,[3] including Capital, of "Heublein's commitment to honor all deals in effect for the holidays that were previously approved by the Glen Ellen Winery." Then, on October 29, the date that the sale closed, Heublein notified Capital in writing that it had not assumed Benziger's wholesaler relationship with Capital; that it would be reviewing wholesaler relationships; that Capital was invited to apply to become a Heublein wholesaler of the products; and that, if Capital agreed to certain terms, Heublein would enter into a short-term agreement for sale of the products. Capital declined the invitation, apprehensive that if it were to do so, it would have agreed to Heublein's right to terminate the wholesaler agreement it had with Benziger. Instead Capital initiated proceedings with the ABCC.

2. *Course of proceedings.* Capital complained to the ABCC within two weeks of receiving Heublein's letter by filing an application for relief, alleging a violation of G. L. c. 138, § 25E. The ABCC ordered Heublein to continue shipping to Capital pending a final decision. On January 31, 1996, the ABCC issued a decision requiring Heublein to sell the products to Capital. Heublein sought judicial review in the Superior Court pursuant to G. L. c. 30A, § 14. Based on its review of the record of proceedings before the ABCC, the Superior Court found that the ABCC decision was based on an error of law and reversed. This appeal followed.

3. *The standard of review.* We conduct an independent review of the ABCC's record, giving no special weight to the decision of the Superior Court. *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass.

---

[3]In its brief Capital states that it had not been a purchaser of the M.G. Vallejo lines of wine.

897, 903 (1979). *J.C. Hillary's* v. *Massachusetts Commn. Against Discrimination*, 27 Mass. App. Ct. 204, 207 (1989).

The familiar standards of review are set forth in G. L. c. 30A, § 14(7). In its appeal to the Superior Court, Heublein claimed only that the decision of the ABCC was based on an error of law. We review to determine whether there was error of law, and whether the decision of the ABCC is supported by substantial evidence, that is "such evidence as a reasonable mind might accept as adequate to support a conclusion," *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988) (defining "substantial evidence"). We defer to the experience, competence, specialized knowledge, and discretionary authority of the agency. *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988); *Van Munching Co.* v. *Alcoholic Bevs. Control Commn.*, 41 Mass. App. Ct. 308, 309-310 (1996). As the ABCC is the agency charged with interpreting and enforcing the provisions of G. L. c. 138, including § 25E, its interpretation of the statute is entitled to deference. *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. at 718; *Police Commr. of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000). *Somerset Importers, Ltd.* v. *Alcoholic Bevs. Control Commn.*, 28 Mass. App. Ct. 381, 385 (1990).

4. *Discussion.* We turn to an analysis of the agency's decision in this case to determine whether there was error of law and whether the decision was supported by substantial evidence.

We begin by examining the relevant statute. While the original intent of G. L. c. 138 (minus § 25E) was to protect the public from the evils of intemperance through the regulation by license of the production, distribution, and sale of alcoholic beverages, the enactment of § 25E in 1971 had but a tenuous connection to this intent and appears more grounded in a theory of antitrust. The section provides for the protection of wholesalers licensed in Massachusetts in their contractual relationship with the national producers by making it an unfair trade practice to discontinue the relationship, except for cause.

The agency set forth in some detail the outlines of its policy in enforcing § 25E in *Cray-Burke Co.* v. *James B. Beam Distil. Co.*, ABCC decision,[4] November 28, 1990. In *Cray*, the com-

---

[4]In a postargument submission, the defendant brought an ABCC case entitled *Gilman & Sons, Inc.* v. *Bacardi-Martini USA, Inc.* (December 29,

mission expressly distinguished the case of *Pastene Wine & Spirits Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 612, 618-619 (1988), as have we, see *Heublein* v. *Alcoholic Bevs. Control Commn.*, 30 Mass. App. Ct. 611, 614 (1991), on the basis that, in *Pastene*, the ABCC expressly found that (1) there was no transfer of distribution rights, and (2) the transaction was determined not to be for the purpose of circumventing § 25E.

The central issue in this case is whether the *Pastene* case controls or is distinguishable. We agree with the ABCC that *Pastene* does not control here. In this case the ABCC found that, by the terms of the sale, Heublein acquired the right to be the sole distributor of the products. The sales contract, by including a number of distribution contracts and documents announcing that it was now exclusive distributor — sent by Heublein to wholesalers — as well as deposition testimony that Heublein was now sole distributor for the product, provide ample "substantial evidence" to support the ABCC finding in this regard. There was also ample evidence to support the ABCC finding that Benziger, as Heublein's predecessor, had sold the product to Capital on a regular basis for far more than the minimum six-month period necessary to trigger the application of § 25E. Thus Benziger's obligation under § 25E could be imputed to Heublein. See *Heublein* v. *Alcoholic Bevs. Control Commn.*, *supra*, at 613-614.

These findings alone would be sufficient to charge Heublein with the obligation to continue selling to Capital under the Benziger agreement. There are more reasons, however. The ABCC also found that, in its agreement with Benziger, Heublein sought specifically to exclude any distribution agreements with wholesalers in ten States, including Capital and three other wholesalers in Massachusetts. Heublein's argument, that the

1999) to our attention. *Gilman* does not repudiate *Cray-Burke;* rather, it refers to it favorably in footnote 14 on page 8 of the ABCC decision. *Gilman* contains language about the Superior Court's decision in the case at bar. The paragraph devoted to that subject does not reveal whether the ABCC has altered its position in response to the Superior Court decision or is simply acquiescing in that decision until this appeal is decided. We would not consider any new interpretation by the ABCC as having persuasive force if it is based on a Superior Court decision that we now hold incorrect, see *Niles* v. *Boston Rent Control Adms.*, 6 Mass. App. Ct. 135, 149 (1978). The ABCC has withdrawn its appeal in the instant case. We have no statement of its position, and we decide this appeal on the basis of the record before us.

ABCC findings did not include a finding that Heublein intended to circumvent the statute, is in error. The ABCC expressly found (1) that "Heublein agreed to assume all of Benziger's distributor agreements for the [p]roducts except for those in Massachusetts and nine other states" and (2) Heublein "acted in a deliberate manner to exclude obtaining any distributor or wholesaler agreement relative to the sale of the [p]roducts to [Capital]." The ABCC concluded that "the obligations [under § 25E] traveled with the rights, which were transferred despite Heublein's efforts to avoid them." The agreement and the deposition testimony of Heublein's vice president and general counsel, that Heublein sought to exclude wholesaler contracts in States where protective statutes existed, provided the ABCC with substantial evidence to support its findings and conclusions.

Heublein's argument that, because it acquired more than just the distribution rights to the product (it acquired the product itself and the means of its production), it could not be held to account for the wholesaler obligations, is unavailing. In *Pastene*, the ABCC expressly found that, unlike here, the assets, but not the distribution rights, had been transferred. The fact that the product and the means of its production had been acquired were tangential to the decision; the ABCC's finding that distribution rights had not been transferred was the key. The 1991 *Heublein* decision is silent on the issue whether the product and the means of production were acquired; the focus of the ABCC and of our court in that case was whether distribution rights to the product were acquired. In this case, it is clear from the list of "Acquired Assets" — "all right, title and interest in and to the trademarks, any registrations thereof and the goodwill appurtenant thereto," "all state and federal label and formula approvals, trade dress rights, trade names, service marks, copyrights, inventions and formulae and all registrations, applications or licenses therefor," — and all "Assigned Contracts" including distribution agreements (save those in States where wholesaler agreements were protected) that distribution rights to the product were purchased as part of the transaction.

Finally, Heublein argues that *Pastene* suggests a statutory interpretation that would preclude imputing Benziger's obligations. Specifically, Heublein relies on the portion of *Pastene* that states: "[W]e do not believe the statute was intended to 'generate inequities against suppliers.' . . . To rule that a

new supplier inherits the § 25E obligations of a prior, now nonexistent supplier, where the former supplier was acquired and liquidated for reasons unrelated to the circumvention of § 25E, would extend § 25E beyond its intended scope and 'generate inequities against suppliers.' " *Pastene Wine & Spirits Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. at 619. Heublein's argument in this respect is misplaced for several reasons. Benziger was not liquidated. Heublein acquired all of those assets devoted to the production of the products, including national distribution rights; included also, were any obligations of Massachusetts wholesalers to Benziger. Although the main reason for the transaction was not the circumvention of § 25E,[5] Heublein did attempt to use the transaction to circumvent the statute, as the ABCC found. Heublein has not attempted, either before the ABCC, the Superior Court or this court, to establish specifically how the application of § 25E would "generate inequities" against it, other than to show that it would be subject to the statute. In its discussions with Benziger leading to the purchase, Heublein suggests that there were only three key issues. These three issues, characterized by Heublein as "walkaway issues," sometimes characterized as deal-busters, included (1) price; (2) representations and warranties about assets being acquired; and (3) the number of Benziger employees that Heublein was prepared to hire. Heublein concedes that it never negotiated with Benziger over whether and which wholesaler relationships would be assumed or excluded. Heublein never tied its willingness to conclude the transaction to a determination of whether or not § 25E would be applicable. Rather, it assumed all wholesaler distribution contracts save those in the ten States protecting wholesaler agreements, and any penalty or other consequence should the wholesaler rights covered by those contracts be enforceable.

The judgment of the Superior Court is reversed. A new judgment shall enter affirming the decision of the ABCC.

*So ordered.*

---

[5]Heublein established several reasons related to national market strategy as the reason for their acquisition, and the commission did not determine otherwise.