HEUBLEIN, INC. *vs.* CAPITAL DISTRIBUTING COMPANY, INC.

Suffolk. May 8, 2001. - July 26, 2001.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Alcoholic Liquors,* Alcoholic Beverages Control Commission, Supplier, Wholesaler. *Administrative Law,* Substantial evidence, Agency's interpretation of statute.

This court, applying the principles set forth in *Pastene Wine & Spirits Co.* v. *Alcoholic Beverages Control Comm'n,* 401 Mass. 612 (1988), concluded that a national alcoholic beverage distributor that had acquired a producer and distributor of wines could not be ordered to sell the product assets to the purchased distributor's former wholesalers, and the purchased distributor's obligations under G. L. c. 138, § 25E, could not be imputed to the purchasing distributor, where the acquisition of the product assets and their distribution rights were made at arm's length, and where there was no evidence before the Alcoholic Beverages Control Commission of any agency relationship or continuing affiliation between the purchasing and purchased distributors following completion of the sale. [704-708]

CIVIL ACTION commenced in the Superior Court Department on February 28, 1996.

The case was heard by *David M. Roseman,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James L. Quarles, III (J. Charles Mokriski* with him) for the plaintiff.

*Robert S. Frank, Jr.,* for the defendant.

The following submitted briefs for amici curiae:

*Louis A. Cassis* for Wine and Spirits Wholesalers of Massachusetts, Inc.

*Craig J. Tiedemann & John J. Tangney, Jr.,* for Distilled Spirits Council of the United States, Inc.

*Gerald J. Caruso & Carlene A. Pennell* for Bacardi U.S.A., Inc.

*Evan T. Lawson* for Chas. Gilman & Sons, Inc., & another.

CORDY, J. Heublein, Inc. (Heublein),[1] is a Connecticut corporation engaged in the business of manufacturing, producing, and distributing a number of nationally known wines and spirits.[2] Benziger Family Ranch Associates (Benziger) was a smaller, partner-owned, and largely family-operated wine business based in California, which, in just over one decade, had managed to build several successful wine brands, including Glen Ellen and M.G. Vallejo (Vallejo). By 1993, the Glen Ellen and Vallejo wines had outgrown Benziger's facilities, and Heublein offered to purchase the two wines in order to fill a gap in their table wine offerings and to achieve cost savings from combining crushing facilities and grape supply contracts.

Heublein paid $135 million to Benziger in an arm's-length transaction to acquire all its assets and operations related to the production and sale of the Glen Ellen and Vallejo wines, including all the physical equipment, inventory, bulk wine and grape supply contracts, trademarks, accounts receivable, and certain other contracts and leases necessary to produce the products. Following the sale of the products, Benziger retained no further interest in the Glen Ellen and Vallejo wines, but continued to produce other wines.

Massachusetts law requires that alcohol products sold in this State by manufacturers or suppliers be sold initially to licensed Massachusetts wholesalers. Those wholesalers in turn sell to retailers who sell to consumers. G. L. c. 138, §§ 12, 15, 18, 18B, 19. Prior to Heublein's purchase of Glen Ellen and Vallejo, Benziger had distributed these products in Massachusetts through Capital Distributing Company, Inc. (Capital), a licensed Massachusetts wholesaler of alcoholic beverages, and four other licensed Massachusetts wholesalers.[3] Those distribution relationships were governed by G. L. c. 138, § 25E, which makes it an

---

[1]Heublein, Inc., is now known as IDV North America, Inc., and is a unit of London-based Grand Metropolitan PLC's International Distillers and Vintners Limited.

[2]Heublein's portfolio at the time relevant here included major wine brands such as Almaden, Inglenook, Blossom Hill, and Beaulieu Vineyard, as well as Smirnoff Vodka, Black Velvet Canadian Whisky, Jose Cuervo Tequila, and Christian Brothers Brandy.

[3]Branded Liquors, Inc.; Martignetti Grocery Company, Inc.; M.S. Walker, Inc.; and Whitehall Company, Ltd.

unfair trade practice for a manufacturer (or other supplier), absent good cause, to refuse to sell a brand of alcohol to a wholesaler if the manufacturer has made regular sales of such brand to the wholesaler during the preceding six-month period.[4] When Heublein purchased the wines from Benziger, it agreed to assume some of Benziger's distributor agreements (with wholesalers) for the wines, but not those in Massachusetts and nine other States.[5]

Heublein notified Benziger's Massachusetts wholesalers that it had acquired the Glen Ellen and Vallejo wines and, while it had not assumed Benziger's local wholesaler relationships, it would review those relationships over a three-month period, and would make wholesaler announcements in early 1994. The wholesalers objected to this intended review, claiming that because they had purchased Glen Ellen and Vallejo wines from Benziger for more than six months, § 25E required Heublein (the successor owner of those products) to continue to sell the

---

[4]General Laws c. 138, § 25E, provides as follows: "It shall be an unfair trade practice and therefor[e] unlawful for any manufacturer, winegrower, farmer-brewer, importer or wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer, winegrower, farmer-brewer, importer or wholesaler has made regular sales of such brand item during a period of six months preceding any refusal to sell.

". . . .

"Good cause as used herein shall be limited to the following conduct:

"(*a*) disparagement of the product so as to impair the reputation of the brand owner or the brand name of any product,

"(*b*) unfair preferment in sales effort for brand items of a competitor,

"(*c*) failure to exercise best efforts in promoting the sale of any brand item,

"(*d*) engaging in improper or proscribed trade practices, or

"(*e*) failure to comply with the terms of sale agreed upon between supplier and wholesaler."

[5]Arizona, California, Connecticut, New Jersey, New Mexico, North Carolina, Virginia, Washington, and Wisconsin.

Heublein's general counsel explained in a deposition that Heublein chose not to assume Benziger's existing distributor agreements in these States because they each had statutes similar to G. L. c. 138, § 25E, which in his view *permitted* a manufacturer who purchased the assets of alcohol products to evaluate and select its own local wholesalers during an initial trial sales period of up to six months. Heublein preferred this approach to merely assuming existing distributor agreements, in order to ensure that the distributors it selected in those States were the very best for the brands.

wines to them unless and until there was "good cause" (as narrowly defined in the statute) to terminate them. The wholesalers each applied to the Alcoholic Beverages Control Commission (commission) for an order requiring Heublein to continue to sell the wines to them.[6]

1. *Procedural background.* In January, 1996, the commission issued its decision interpreting § 25E to mean that, if a product and its distribution rights are transferred from one supplier (in this case a manufacturer) to another, any wholesaler with existing § 25E rights is entitled to purchase the product from the new supplier, and ordered Heublein to sell the products to the wholesalers.

Heublein appealed from the commission's order to the Superior Court pursuant to G. L. c. 30A, § 14, where it was reversed following a review of the administrative record. The Superior Court judge ruled that the commission had committed an error of law and that when a product is transferred from one supplier to another, the previous supplier's obligations to its wholesalers (protected by § 25E) do not automatically travel with the product to the successor supplier.

Only Capital appealed to the Appeals Court. *Heublein, Inc.* v. *Capital Distrib. Co.*, 50 Mass. App. Ct. 339, 340 n.2 (2000). The commission initially filed an appeal, but withdrew it, and has not offered an appellate argument in support of its 1996 decision. In fact, the commission's subsequent decisions appear to take the opposite position. See discussion, *infra.* The Appeals Court reversed the judgment of the Superior Court. *Id.* at 340. We granted Heublein's application for further appellate review.[7] We conclude that a former supplier's obligations under § 25E

---

[6]On November 16, 1993, the commission ordered Heublein to "continue" to make sales of the products to Capital and the other wholesalers pending a hearing and decision on the matter.

As noted above, following the sale of the products to Heublein, Benziger continued to operate as a winery, producing and selling products other than those at issue here. These other Benziger wine brands were still available for distribution by its Massachusetts wholesalers after the 1993 sale of Glen Ellen and Vallejo wines to Heublein.

[7]We acknowledge the amicus briefs filed by Bacardi U.S.A., Inc.; Chas. Gilman & Sons, Inc., and Martignetti Grocery Company, Inc.; Distilled Spirits Council of the United States, Inc.; and Wine and Spirits Wholesalers of Massachusetts, Inc.

to continue to sell a product to its wholesalers is not imputed to a successor supplier who obtains ownership of the product through an arm's-length asset acquisition. The judgment of the Superior Court is therefore affirmed.

2. *Administrative action.* In its decision requiring Heublein to sell Glen Ellen and Vallejo wines to Capital and others, the commission pointed out that since 1985 it had "consistently held that where distribution rights to a product are transferred from one supplier to another, the transfer is subject to existing [§] 25E rights: i.e., unless otherwise agreed by the wholesaler, the wholesaler has a right to purchase [the] product from the new supplier." The commission acknowledged that this interpretation departed from its earlier construction of the statute, which did not automatically impose such an obligation on the new supplier. In *Pastene Wine & Spirits Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 612, 618-619 (1988) (*Pastene*), we upheld a 1983 commission decision that was based on that earlier construction, and rejected a wholesaler's argument that a liquidated supplier's § 25E obligations to wholesalers should as a matter of policy be imputed to a successor supplier. We concluded that such an argument "overstates the intended scope of § 25E." *Id.* at 618. The commission's revised view of the statute apparently resulted from an "evolution of [its] interpretation" of § 25E, and its related "finding" that our *Pastene* decision should be limited to its facts.[8] Based on this reasoning, the commission found, concerning the Glen

---

[8]In a series of decisions that followed *Pastene Wine & Spirits Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 612, 618-619 (1988), the commission explained:

> "The Pastene case first came before the [c]ommission in 1981. Since that time the [c]ommission's interpretation of the statute has evolved on the basis of substantial experience . . . includ[ing] observation of large scale merger and acquisition activity in the alcoholic beverages industry. The industry is increasingly characterized by a small number of multinational corporations, each controlling many brands and large market shares. Major transfers of product rights in complex multi-party transactions have become commonplace. Many smaller wholesalers have been forced out, and those that remain operate at a considerable disadvantage in dealing with the major distributors.

> "The purpose of [§] 25E is to prevent unreasonable interruption of supply to wholesalers in good standing. If producers and suppliers

Ellen and Vallejo products, that "the [§ 25E] obligations traveled with the [product distribution] rights, which were transferred despite Heublein's efforts to avoid them."[9] Accordingly, the commission ordered Heublein to sell the products to Capital and Benziger's other former Massachusetts wholesalers.

3. *Superior Court ruling.* In reviewing the commission's order pursuant to G. L. c. 30A, § 14 (7),[10] the judge noted that the agreement between Heublein and Benziger "was an arm's length asset purchase," and that the question raised by the case was whether, in the context of such a purchase, Benziger's § 25E obligations could be properly imputed to Heublein. Relying on our *Pastene* opinion, the judge answered in the negative, reasoning that this was not a case such as *Heublein, Inc.* v. *Alcoholic Beverages Control Comm'n*, 30 Mass. App. Ct. 611, 614-616 (1991), where the court upheld the imputation of § 25E obligations to a new supplier, noting that the previous supplier and the new supplier were linked financially by a joint venture. To the contrary, the judge found that:

> could exempt themselves from the requirements of the statute by use of intermediaries or by assigning their distribution rights to another entity, the intent of the statute would be easily defeated. Where suppliers seek to discontinue sales to a wholesaler, the statute empowers the [c]ommission to grant such relief as may be appropriate under the circumstances.
>
> "Beginning with *Kelly-Dietrich* v. *Austin-Nichols* [ABCC decision, April 15, 1986], and consistently since that decision, the [c]ommission has interpreted the statute to require that a supplier who acquires distribution rights for a product acquires those rights subject to the obligation to supply wholesalers in good standing" (footnote omitted).

*Seacoast Distillers, Inc.* v. *Hiram Walker, Inc.*, ABCC decision, August 14, 1990.

[9]While the commission purported to "find," "[b]ased on the evidence heard," that "the obligations traveled with the rights" when the products were sold by Benziger to Heublein, this is not a finding of fact, but a conclusion of law, subject to our review.

[10]General Laws c. 30A, § 14 (7), provides, in pertinent part: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . (*c*) Based upon an error of law . . . ."

"[T]here was no evidence and, thus, no finding that Heublein acquired Benziger for the purpose of circumventing § 25E. . . . [F]urther[more], none of Benziger's owners or partners were affiliated in any way with Heublein or the [p]roducts after the acquisition. Seeking to avoid obligations under § 25E, if any exist, is quite different [from] acquiring distribution rights for the specific purpose of circumventing § 25E."[11]

In effect, the judge recognized that there are legitimate business reasons for a new supplier, who is not an agent of or affiliated with the previous supplier, to want to evaluate its prospective wholesalers for the six-month trial period provided by the Legislature in § 25E,[12] and that structuring the execution of an arm's-length acquisition to ensure that possibility did not convert the purpose of the transaction to one intended to circumvent § 25E.

4. *Discussion.* Like the courts below, we review the commission's decision pursuant to G. L. c. 30A, § 14 (7), to determine whether, as Heublein claims, it was based on an error of law, and whether the decision is supported by substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support the agency's conclusion." *Seagram Distill-*

---

[11]In its administrative findings of fact, the commission found that in its execution of the transaction Heublein "acted in a deliberate manner to exclude obtaining any distributor or wholesaler agreement relative to sale of the [wine] to [Benziger's Massachusetts wholesalers]." This is significantly different from a finding that the purpose of the transaction was to circumvent § 25E, a basis on which § 25E obligations have been imputed to successor suppliers by the commission. See, e.g., *Martignetti Grocery Co.* v. *Vintners Int'l Co.*, ABCC decision, April 22, 1991. Such cases have always involved a surviving affiliation or agency relationship between the former holder of the product rights and the successor holder. See *Charles E. Gilman & Sons* v. *Bacardi-Martini USA, Inc.*, ABCC decision, December 29, 1999, and ABCC decisions cited.

In the present case, the commission specifically found that Heublein purchased the wine products "to help consolidate its position in the wine industry, increase its market share and strengthen its position with distributors," and, implicitly, not for the purpose of circumventing § 25E.

[12]"Persons in a highly sensitive, closely scrutinized business (such as the liquor business) have need to know about and appraise the persons behind [the] corporations with whom they are doing business." *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 717 (1988), quoting *Union Liquors Co.* v. *Alcoholic Beverages Control Comm'n*, 11 Mass. App. Ct. 936, 938 (1981).

*ers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988), citing *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 520-521 (1971) (defining "substantial evidence"). In our review of administrative agency decisions, we generally defer to the experience, technical competence, specialized knowledge, and discretionary authority of the agency. *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n, supra*, citing G. L. c. 30A, § 14 (7). See *Somerset Importers, Ltd.* v. *Alcoholic Beverages Control Comm'n*, 28 Mass. App. Ct. 381, 385 (1990) ("An interpretation of § 25E made by the administrative agency charged with administering the statute is one to which we accord weight").

It was inappropriate, however, for the commission in its decision to "find," based on its then current interpretation of § 25E, that our *Pastene* decision should be limited to its facts. See *Police Comm'r of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000), quoting *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964) ("duty of statutory interpretation is for the courts"); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 371 Mass. 584, 589 (1976) (ultimate responsibility for interpreting provisions of G. L. c. 138 rests with court, not commission); *Arnone* v. *Commissioner of the Dep't of Social Servs.*, 43 Mass. App. Ct. 33, 34 (1997) (approach of reviewing court to agency determinations is one of deference and restraint, not abdication). When we intend to limit one of our decisions to its particular facts, we say so explicitly. See, e.g., *Franklin* v. *Spadafora*, 388 Mass. 764, 768 (1983); *Duby* v. *Baron*, 369 Mass. 614, 625 (1976).

The commission's decision to limit our *Pastene* decision strictly to its facts was apparently prompted by its 1985 "depart[ure]" from its earlier construction of § 25E, a construction that did not automatically impute to the successor supplier an obligation to retain wholesalers chosen by the previous supplier after a six-month period of regular sales. A reading of two of the commission's recent decisions that followed the Superior Court judge's ruling in this case[13] indicates that this "departure" has now come to an end.

---

[13]As noted above, the commission ultimately chose not to pursue an appeal of the ruling.

In *United Liquors, Ltd.* v. *Brown-Forman Corp.*, ABCC decision, June 16, 1998, the commission found that termination of the United States distributor of a vodka product by its Finland manufacturer, who then assigned the distribution rights of the product to a new United States distributor, did not impute the § 25E wholesaler obligations to the new distributor. There was no imputation of such obligations because the commission found no agency relationship between the prior United States distributor and the Finland manufacturer, that is, the foreign manufacturer had not exerted any control over the national distributor's choice of wholesalers to distribute the vodka product in the various States. Nor was there any connection (such as ownership interest) between the prior national distributor and its successor. In the absence of such control or connection, there was no reason to assume that the termination and subsequent assignment of the national distribution rights of the product to a new national distributor had been done in order to circumvent the § 25E obligations owed by the prior national distributor to Massachusetts wholesalers. The commission also found "that [§] 25E obligations do not run with the product . . . but only with the manufacturer, winegrower, farmer-brewer, importer or wholesaler. *If the legislature intended the obligation to run with the product, it would have said it.* See *Pastene,* [*supra*] at 618-619 . . . ." (Emphasis added; citation omitted.) *Id.*

In *Charles E. Gilman & Sons* v. *Bacardi-Martini USA, Inc.*, ABCC decision, December 29, 1999 (*Gilman*), the commission attempted to reconcile its § 25E decisions from 1986 onward in light of its current understanding of our *Pastene* ruling. In reviewing all the decisions in which it had imputed § 25E obligations to successor suppliers, the commission noted that their one common factor was the presence of a continuing affiliation or agency relationship between the new supplier and the former supplier:

> "The matter[s] in which the [c]ommission and the courts affirmed imputing [§] 25E obligations to a new supplier under a theory of assignment of distribution[] rights involved product that [was still] being manufactured and/or [remained] under the control of the former supplier, its parent company or a combination of the parent and/or

former supplier and the new supplier. The manufacturing and distributing of the product was not sold to a new supplier." (Footnotes omitted.)

*Id.* The commission concluded in *Gilman* that an arm's-length sale of product lines between suppliers, that is, one in which the right to control the product *had* been sold to a new supplier, did not result in a transfer of § 25E obligations between those suppliers. *Id.*

While we give deference to "long consistent administrative interpretations of an agency's governing statute," *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 335 n.12 (1985), in the absence of such consistency, as here, such deference is not required. We note, however, that the commission's recent *Gilman* decision is in accord with our own cases interpreting § 25E.[14] In the *Pastene* case, we noted that "[w]hile § 25E apparently was adopted to counteract a tendency toward vertical integration in the liquor distribution industry . . . and to redress economic imbalances in the relationship of wholesalers and their suppliers, *we do not believe the statute was intended to 'generate inequities against suppliers'* " (emphasis added). *Pastene, supra* at 618-619, quoting *Amoco Oil Co.* v. *Dickson*, 378 Mass. 44, 50 (1979). The commission's *Gilman* decision does not produce such inequities, but rather provides principles "by which the commission may reconcile the competing equities between suppliers and wholesalers of liquor in the Commonwealth." *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n, supra* at 717.

Applying the principles of our *Pastene* decision, we conclude that Heublein cannot be ordered to sell the products to Benziger's former wholesalers, and Benziger's § 25E obligations

---

[14]In the present case, the Appeals Court refused to consider the commission's *Gilman* decision as a "new interpretation" of § 25E by the commission, because while the decision contained language concerning the Superior Court's decision in the present case, "[t]he paragraph devoted to that subject does not reveal whether the [commission] has altered its position in response to the Superior Court decision or is simply acquiescing in that decision until this appeal is decided." *Heublein, Inc.* v. *Capital Distrib. Co.*, 50 Mass. App. Ct. 339, 342 n.4 (2000). The relevance of the *Gilman* decision is that it provided an interpretation of § 25E that is in accord with our interpretation of the statute as set forth in *Pastene, supra* at 618-619.

cannot be imputed to Heublein, where the acquisition of the product assets and their distribution rights were made at arm's length and there was no evidence before the commission of any agency relationship or continuing affiliation between Heublein and Benziger following the completion of the sale. As the commission explicitly found, at the conclusion of the sale Heublein had "sole control" over the products, and Benziger had none.

This result is in conformance with the literal wording of the statute, which imposes termination restrictions on manufacturers who have made continuous sales to wholesalers for six months. Heublein never sold Glen Ellen and Vallejo wines to Benziger's Massachusetts wholesalers, and therefore the statutory limitations with regard to terminating them do not apply to Heublein unless some other principle of law imputes Benziger's obligations to it. No such principle is present in this case.

The judgment of the Superior Court is affirmed.

*So ordered.*