PASTENE WINE & SPIRITS CO., INC., & others *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION & another.

Suffolk.    April 19, 1983. — June 7, 1983.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Alcoholic Beverages Control Commission.    Public Board,* Decision,
Quorum.

Where the first documentation of a final decision of the Alcoholic Bever-
ages Control Commission was a written opinion and decision filed
nearly seven weeks after the tenure in office of one of the two commis-
sioners hearing the case had expired, the decision was void for its
failure to comply with the quorum requirement of G. L. c. 4, § 6.
[157-158]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1981.

The case was heard by *Vallely*, J., on a motion for sum-
mary judgment.

*Evan T. Lawson* for the plaintiffs.

*Robert S. Frank, Jr.,* for M-H U.S.A. Corp.

*Charles E. Walker, Jr.,* Assistant Attorney General, for
Alcoholic Beverages Control Commission.

HALE, C.J.    This action was brought in the Superior
Court pursuant to G. L. c. 30A, § 14, for review of a deci-
sion of the Alcoholic Beverages Control Commission (Com-
mission), under the provisions of the liquor franchise protec-
tion law, G. L. c. 138, § 25E.    A summary judgment was
entered dismissing the complaint.    The plaintiffs, Pastene
Wine & Spirits, Co., Inc., Atlas Distributing Corp. and
Kelly-Dietrich, Inc., have appealed.    We vacate the judg-
ment of the Superior Court and remand the case for further
proceedings.

The plaintiffs are wholesalers of alcoholic beverages
licensed under G. L. c. 138, § 18.    Until July, 1981, Schief-

felin & Co. made regular sales of brand name alcoholic beverages to the plaintiffs. On or about January 5, 1981, the capital stock of Schieffelin was purchased by Moet-Hennessy, S.A., a French corporation, and Schieffelin thereafter became a wholly owned subsidiary of the defendant M-H U.S.A. (a wholly owned subsidiary of Moet-Hennessy, S.A.). Although the capital stock of Schieffelin was purchased on January 5, 1981, its liquidation was postponed until M-H U.S.A. could secure the licenses and permits required to do business in the Commonwealth. On or about July 1, 1981, Moet-Hennessy, S.A., caused Schieffelin to be liquidated. Since that time M-H U.S.A. has not entered into any agreement with any of the plaintiffs and has refused to make sales to any of them.

In June, 1981, the plaintiffs each filed an "Application for Relief under G. L. c. 138, § 25E," with the Commission, alleging that M-H U.S.A.'s refusal to make sales to them was an unfair trade practice in violation of that statute. The matter was heard by Chairman Larkin and Commissioner Goodwin on August 4, 1981. According to affidavits filed by Goodwin and Larkin in the Superior Court action, Commissioner Goodwin was notified by the Governor's office on September 2, 1981, that his tenure as Commissioner would terminate as of September 4, 1981. On September 3 Commissioner Goodwin met with Chairman Larkin for the purpose of deciding the instant case. On that date, they agreed that the plaintiffs' application for relief should be denied, and Commissioner Goodwin drafted language encompassing the rationale of the decision. The affidavits state that it was further agreed that "Mr. Larkin would write the final opinion and incorporate the above-mentioned rationale into the final decision." On September 4, 1981, Goodwin's term on the Commission ended. On October 21, 1981, the written opinion and decision was signed by Goodwin over the title "Commissioner" and by Chairman Larkin and was then issued.

Because we conclude that the Commissioners' decision was void due to procedural defects, we do not reach issues raised regarding the interpretation and application of G. L.

c. 138, § 25E. When a statute gives joint authority to act to three or more public officials, that authority must be exercised by a majority. G. L. c. 4, § 6. The Commission, as it consists of three members, must decide proceedings before it by concurrent act of at least two members of the Commission.

We conclude that the crucial time for testing the validity of an order is the time at which the decision is made final by virtue of documentation such as entry in the agency's records of a formal order or by notification to the parties of the agency's conclusion. Until a decision is committed to the record in some form, it is wholly subject to modification or recall. See *Amodio* v. *Reconstruction Fin. Corp.*, 191 F.2d 862, 864 (Emer. Ct. App. 1951). There may be doubt or dispute as to what was orally decided, but issuance of a written decision or order ensures that a consensus has indeed been reached. See *Grimes* v. *Cleveland*, 17 Ohio Misc. 193, 195 (1969).

In the instant case, had there been contemporaneous formal documentation of the September 3, 1981, agreement, the signature of Goodwin on the October 21, 1981, opinion might have been, as the defendants suggest, a mere ministerial act. In the absence of such documentation, however, his October 21 signature is the first evidence of a commitment to a final decision. Indeed, Goodwin and Larkin indirectly acknowledge in their affidavits that the "final opinion" and "final decision" were not arrived at until after Goodwin's tenure in office expired. Because the first documentation of a final decision is dated nearly seven weeks after Goodwin's departure from the Commission, the decision is void for its failure to comply with the quorum requirement of G. L. c. 4, § 6.

The judgment is reversed, and a new judgment is to enter setting aside the decision of October 21, 1981, and remanding the matter to the Commission for further proceedings with respect to the plaintiffs' application for relief. The Commission shall have discretion to hear arguments of counsel, to hold additional hearings, or to decide the matter on the record previously made.

*So ordered.*