PASTENE WINE & SPIRITS CO., INC. *vs*. ALCOHOLIC
BEVERAGES CONTROL COMMISSION & another.[1]

Middlesex.   December 9, 1987. — February 1, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & LYNCH, JJ.

*Alcoholic Liquors*, Wholesaler, Supplier. *Practice, Civil*, Stipulation. *Administrative Law*, Evidence, Record. *Statute*, Construction.

In an action by a liquor wholesaler for judicial review of a decision of the
Alcoholic Beverages Control Commission, the plaintiff was held, in the
circumstances, to be bound by its stipulation in the Superior Court to
the effect that its former supplier of alcoholic beverages had been liquid-
ated, where it made no effort to develop a record before the agency or
the Superior Court to support its argument, raised only on appeal, that
the supplier had merged into a certain corporation which, the plaintiff
alleged, had violated G. L. c. 138, § 25E, by refusing to supply it with
brand-name liquor products. [615-616]
Substantial evidence supported the Alcoholic Beverages Control Commis-
sion's findings that the acquisition and liquidation of a corporate dis-
tributor of brand-name alcoholic liquors by a liquor importing and dis-
tributing corporation was not undertaken in order to circumvent the
acquired corporation's obligations to wholesalers under G. L. c. 138,
§ 25E, and the evidence supported as well the commission's finding
that a subsidiary of the acquiring corporation had never sold liquor to
a certain wholesaler who was alleging a violation of § 25E. [616]
A liquor importing corporation which acquired and liquidated a corporate
supplier of alcoholic liquor did not succeed to the obligations of the
acquired corporation under G. L. c. 138, § 25E, where the supplier was
acquired and liquidated for reasons unrelated to the circumvention of
§ 25E. [618-619]
General Laws c. 138, § 25E, which prohibits a distributor of alcholic liquors
from refusing to sell, except for good cause shown, certain brand-name
alcoholic beverages to any wholesaler to whom it has made regular sales
of such brand-name items during a period of six months preceding such
refusal to sell, contemplates a regular course of dealing for a full six
months before a supplier is thereby obligated to continue sales to a
wholesaler. [619-620]

---

[1] M-H U.S.A. Corp.

CIVIL ACTION commenced in the Superior Court Department on January 19, 1984.

The case was heard by *Joseph S. Mitchell, Jr.,* J., on a master's report.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Evan T. Lawson (William F. Coyne, Jr.,* with him) for the plaintiff.

*Mark A. Michelson (Andrew J. Freed* with him) for M-H U.S.A. Corp.

*Douglas H. Wilkins,* Assistant Attorney General, for Alcoholic Beverages Control Commission.

HENNESSEY, C.J. The plaintiff, Pastene Wine & Spirits Co., Inc. (Pastene), is a liquor wholesaler licensed under G. L. c. 138, § 18 (1986 ed.). In 1981, Pastene commenced proceedings before the Alcoholic Beverages Control Commission (ABCC), alleging that the defendant M-H U.S.A. Corp., a liquor importer, was violating G. L. c. 138, § 25E, by refusing to sell Pastene certain alcoholic beverages.[2] An ABCC ruling in favor of M-H U.S.A. was affirmed by the Superior Court. The Appeals Court reversed, however, on the ground that the ABCC lacked a quorum at the time it rendered its decision because the term of one of its commissioners had expired. *Pastene Wine & Spirits Co.* v. *Alcoholic Beverages Control*

---

[2] General Laws c. 138, § 25E (1986 ed.), provides as follows: "It shall be an unfair trade practice and therefor unlawful for any manufacturer, winegrower, farmer-brewer, importer or wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer, winegrower, farmer-brewer, importer or wholesaler has made regular sales of such brand item during a period of six months preceding any refusal to sell.

". . . .

"Good cause as used herein shall be limited to the following conduct:

"(*a*) disparagement of the product so as to impair the reputation of the brand owner or the brand name of any product,

"(*b*) unfair preferment in sales effort for brand items of a competitor,

"(*c*) failure to exercise best efforts in promoting the sale of any brand item,

"(*d*) engaging in improper or proscribed trade practices, or

"(*e*) failure to comply with the terms of sale agreed upon between supplier and wholesaler."

*Comm'n,* 16 Mass. App. Ct. 156 (1983). The case was remanded to the ABCC for further consideration.

The ABCC reheard the case in September, 1983. The parties agreed that the rehearing would be based on the record developed during the original hearing. The ABCC again ruled in favor of M-H U.S.A. Pastene appealed to the Superior Court, where the judge referred the case to a special master. The parties stipulated to the relevant facts, and the special master recommended that the ABCC decision be upheld. On September 29, 1986, the Superior Court judge concluded that the findings and rulings contained in the first Superior Court decision were correct, and that the ABCC decision again should be affirmed. Pastene appealed to the Appeals Court, and we transferred the case on our own motion. We affirm.

1. *ABCC's findings of fact.* The facts as found in the original hearing, as adopted at the second hearing, and as stipulated in the second Superior Court proceeding, are summarized as follows. Until July, 1981, Schieffelin & Co., a New York importer, made regular sales of brand name alcholic beverages to Pastene. Among the products distributed by Schieffelin and sold to Pastene were those produced by Moet-Hennessy, S.A., a French corporation. On or about January 5, 1981, Moet-Hennessy purchased Schieffelin's capital stock, and Schieffelin thereafter became a wholly-owned subsidiary of the defendant M-H U.S.A. (a wholly-owned subsidiary of Moet-Hennessy). Although the capital stock of Schieffelin was purchased on January 5, 1981, its liquidation was postponed until M-H U.S.A. could secure the licenses and permits required to do business in the Commonwealth and other States. On or about July 1, 1981, Moet-Hennessy caused Schieffelin to be liquidated. Since that time M-H U.S.A., while distributing some of the products previously distributed by Schieffelin to some of Schieffelin's former wholesalers, has refused to sell to Pastene. See *Pastene Wine & Spirits Co., supra* at 156-157. The ABCC also found, although the parties did not stipulate, that Moet-Hennessy's and M-H U.S.A.'s acquisition and liquidation of Schieffelin was not undertaken for the purpose of avoiding G. L. c. 138, § 25E, and that M-H U.S.A. had never made

sales to Pastene. These findings were adopted by the Superior Court.

The parties are bound by the facts contained in their stipulation to the Superior Court. See *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 599 (1952). Pastene, claiming it was misled by opposing counsel, urges this court to relieve it of the stipulation that Schieffelin was liquidated. See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 114 (1973) (party is bound by stipulation unless court "vacates it as improvident or not conducive to justice"). Pastene contends that Schieffelin actually was merged into M-H U.S.A. Pastene has made a motion to supplement the record pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 924 (1979), to include what appear to be documents filed with the State of Delaware in July of 1981, accomplishing the merger. This evidence was not presented to the ABCC nor did Pastene argue to the ABCC that Schieffelin was merged into M-H U.S.A. and not liquidated.

We decline to relieve Pastene of the effect of its stipulation, and deny its motion to supplement the record with the apparent Delaware corporate records. At the first ABCC hearing, the sole witness testifying stated that Schieffelin had been liquidated. Pastene was free to cross-examine the witness on the issue, but failed to do so. Pastene was free to conduct discovery prior to the hearing to determine to its satisfaction the exact nature of the corporate transactions at issue. Pastene was also free to develop a new record at the second ABCC hearing, but chose instead to make its arguments based on the record created at the first hearing. The evidence which Pastene now seeks to add to the record has been available to the public since 1981. Further, even if the stipulation were removed, the ABCC findings which form the basis of the stipulation would still remain. One of the ABCC's findings was that Schieffelin was liquidated. This finding was supported by the substantial evidence of sworn testimony at the first ABCC hearing. In all these circumstances it is not unjust to hold Pastene to its stipulation. These circumstances also make granting Pastene's motion to supplement the record with the apparent Delaware corporate

documents inappropriate, even if we assume, arguendo, that rule 8 (e) allows such addition of evidence not presented below. See *United States* v. *Walker*, 601 F.2d 1051, 1054-1055 (9th Cir. 1979) (Federal counterpart of rule 8 [e] is designed to allow for accurate transmission of record, not to enlarge the record on appeal).[3]

The ABCC's findings that Moet-Hennessy and M-H U.S.A. did not acquire and liquidate Schieffelin in order to circumvent § 25E, and that M-H U.S.A. never made sales to Pastene, will be upheld if based on substantial evidence. See *Boylston-Washington, Inc.* v. *Alcoholic Beverages Control Comm'n*, 8 Mass. App. Ct. 396, 398 (1979). The record of the first ABCC hearing which, by the parties' agreement, was used at the second hearing as well, consists of statements of fact related and agreed to by the parties' counsel, and the testimony of one witness. The facts, as stated, established that the acquisition of Schieffelin cost Moet-Hennessy in excess of $48,000,000, and the witness testified that the subsequent liquidation resulted in a tax saving of approximately $7,000,000. The agreed facts also indicate that new management was installed at Schieffelin and that M-H U.S.A. instituted operational changes once it was licensed and Schieffelin had been liquidated. These factors indicate that Moet-Hennessy and M-H U.S.A. had entered into a large scale corporate transaction with the intention of operating an ongoing liquor importing and distributing business. In sum, the record contains substantial evidence supporting the ABCC's finding that the acquisition and liquidation of Schieffelin was not undertaken in order to circumvent § 25E. Similarly, counsels' statement that M-H U.S.A. never made sales to Pastene supports the ABCC's finding to that effect.

2. *The ABCC's rulings of law.* General Laws c. 138, § 25E, makes it an unfair trade practice for an importer, absent good cause, to refuse to sell to a wholesaler a brand item if the

---

[3] In its motion to supplement the record, Pastene also requested that a copy of a supplemental memorandum submitted to the Superior Court, but not included in the record on appeal, be added to the record. We grant that portion of Pastene's motion to supplement, so that our review will be of a full and complete record. See Mass. R. A. P. 8 (e).

importer "has made regular sales of such brand item [to the wholesaler] during a period of six months preceding any refusal to sell." Pastene makes two arguments that, on the facts as found below, M-H U.S.A.'s refusal to sell it Moet-Hennessy brand items, as Schieffelin had prior to Schieffelin's liquidation, is a violation of § 25E.

First, Pastene contends that, because § 25E evinces a policy of avoiding vertical integration in the liquor distribution industry by protecting wholesalers from the superior economic position of manufacturers and importers, this court should rule that when M-H U.S.A. began distributing the products which Schieffelin had previously distributed, it assumed Shieffelin's § 25E obligations. To rule otherwise, Pastene contends, would allow manufacturers such as Moet-Hennessy to avoid § 25E obligations by shifting its intermediaries. Pastene claims that a number of ABCC rulings take this approach. Pastene's second argument is that Schieffelin's sales to Pastene from January 5, 1981, through June 30, 1981, when Schieffelin was a subsidiary of M-H U.S.A., should be attributed to M-H U.S.A., and thereby establish direct § 25E obligations from M-H U.S.A. to Pastene.

The ABCC rejected Pastene's arguments. As to the first argument, the ABCC concluded that, because M-H U.S.A. had never made sales to Pastene, the protections afforded by § 25E did not apply.[4] As to the second argument, the ABCC ruled that there was no legal basis from which to impute the January 5, 1981, through June 30, 1981, Schieffelin sales to M-H U.S.A. The ABCC further ruled that, even if these sales were imputed to M-H U.S.A., those sales continued for a period of less than six months and, therefore, § 25E was not satisfied.

---

[4] In its brief, Pastene argues that the ABCC did not adequately rule on the argument that "as a matter of public policy the ultimate suppliers of alcoholic beverages must be bound by Section 25E, and that that responsibility cannot be avoided by adding, removing, or changing intermediaries." See G. L. c. 30A, § 11 (8) (1986 ed.). We reject this argument because the ABCC decision contains sufficient reasoning to allow appellate review of the conclusion that "the protections afforded by . . . § 25E do not apply" in the circumstances of this case. See *Maddocks* v. *Contributory Retirement Appeal Bd.*, 369 Mass. 488, 497 (1976).

We uphold the ABCC's ruling on Pastene's first argument. The ABCC found, and it is undisputed, that M-H U.S.A. made no direct sales to Pastene. Because § 25E applies only if a supplier refusing to sell had previously sold to the wholesaler refused, M-H U.S.A. itself created no § 25E obligations to Pastene. In order for Pastene to prevail on the first argument, therefore, there must be some basis for imputing Schieffelin's § 25E obligations to M-H U.S.A. upon Schieffelin's liquidation.

Pastene argues, in essence, relying on several ABCC decisions rendered after the second ABCC decision in this case,[5] that as a matter of policy and in order to advance § 25E goals, this court should rule that because M-H U.S.A. replaced Schieffelin and began distributing products previously sold by Schieffelin, Schieffelin's § 25E obligations should be imputed to M-H U.S.A. We reject this argument because we believe that, on the facts of this case, it overstates the intended scope of § 25E. While § 25E apparently was adopted to counteract a tendency toward vertical integration in the liquor distribution industry, see *Opinion of the Justices*, 368 Mass. 857, 861

---

[5] Pastene's motion to remand this case in light of these later ABCC decisions was denied by the special master. Pastene's one-sentence statement to this court, that denial of the motion was an abuse of discretion, does not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We conclude, in any event, that the ABCC decisions relied on are distinguishable. See *Ruby Wines, Inc* v. *Champagne Louis Roederer*, ABCC decision, April 29, 1986 (where manufacturer's *agent* made sales to wholesalers, the § 25E obligations created are imputable to manufacturer when it begins direct distribution); *Kelly-Dietrich, Inc.* v. *Austin-Nichols Co.*, ABCC decision, April 15, 1986 (where supplier assigns its right to distribute product, acquirer of right assumes existing § 25E obligations); *Classic Wine Imports, Inc.* v. *Sutter Home Winery, Inc.*, ABCC decision, April 9, 1986 (where manufacturer's *agent* made sales to wholesalers, § 25E obligations created are imputable to manufacturer when it begins direct distribution). In the case before us, there is no finding of any agency relationship between Moet-Hennessy or M-H U.S.A. and Schieffelin, and no finding that there was an assignment of the rights to distribute products. Finally, the more recent ABCC decision in *Martignetti Grocery Co.* v. *Seagram Wine Co.*, ABCC decision, June 4, 1987, brought to our attention in the ABCC's brief, does not make clear the underlying facts at issue. This decision is, therefore, of no assistance in determining the merits of this case.

(1975) (construing related section of G. L. c. 138), and to redress economic imbalances in the relationship of wholesalers and their suppliers, we do not believe the statute was intended to "generate inequities against suppliers." *Amoco Oil Co.* v. *Dickson*, 378 Mass. 44, 49-50 (1979) (construing former G. L. c. 93E, § 5A, as appearing in St. 1976, c. 64, § 5, which redressed economic imbalances between gasoline suppliers and retailers). To rule that a new supplier inherits the § 25E obligations of a prior, now nonexistent supplier, where the former supplier was acquired and liquidated for reasons unrelated to the circumvention of § 25E, would extend § 25E beyond its intended scope and "generate inequities against suppliers." *Amoco Oil Co.* v. *Dickson, supra.*[6]

There also was no error in the ABCC's rejection of Pastene's argument that Schieffelin's sales to Pastene from January 5, 1981, through June 30, 1981, should be attributed to M-H U.S.A., and that these sales placed § 25E obligations on M-H U.S.A. Even if it is assumed that these sales, made while Schieffelin was M-H U.S.A.'s subsidiary, are attributable to M-H U.S.A., they did not continue for six months. As a result, they cannot be "regular sales . . . during a period of six months preceding" M-H U.S.A.'s refusal to sell to Pastene. We reject Pastene's argument that § 25E should be construed to require only some sales during any of the previous six months for a supplier to be obligated to continue sales. This construction would convert the statutory language of "regular sales . . . during a period of six months" to any sales within the previous

---

[6] Pastene also argues that Schieffelin's § 25E obligations should be imputed to M-H U.S.A. as a matter of corporate law. First, Pastene contends that because Schieffelin was merged into M-H U.S.A., M-H U.S.A. acquired Schieffelin's § 25E obligations. This argument is contrary to the stipulation that Schieffelin was liquidated. Second, Pastene contends that even if M-H U.S.A. acquired Schieffelin's assets, rather than merging with Schieffelin, it is proper to impute Schieffelin's § 25E obligations to M-H U.S.A. because: (1) the transaction amounted to a merger; (2) no consideration was paid to Schieffelin at the time of the liquidation; and (3) M-H U.S.A. was a mere continuation of Schieffelin, citing *Cyr* v. *B. Offen & Co.*, 501 F.2d 1145 (1st Cir. 1974). Because Pastene did not make this argument to the ABCC, it may not now be raised on appeal. *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493 (1983).

six months. Such a construction distorts the plain meaning of the words the Legislature chose and, therefore, is to be rejected. See *Burke* v. *Chief of Police of Newton*, 374 Mass. 450, 452, 453 (1978). Further, a review of G. L. c. 138 indicates that, where the Legislature has intended to focus on "any sale within" a preceding period of months, it has stated that intent in those words. See G. L. c. 138, § 25A ("Any sale . . . within such thirty day period"); G. L. c. 138, § 43 (evidence of unlawful sale "within one month"); G. L. c. 138, § 69 (sale to person known to have been intoxicated "within the six months last preceding"). The absence of this language in § 25E indicates that the Legislature intended that there be a regular course of dealing for a full six months before suppliers are obligated to continue sales to wholesalers. The Schieffelin sales that Pastene argues are attributable to M-H U.S.A. did not continue for the requisite six months.

*Judgment affirmed.*