Gordon, Robert B., J.
This case arises out of the refusal of Beam Spirits & Wine, LLC (“Beam”) to sell a popular alcoholic beverage — the “Skinnygirl Margarita” — to a Massachusetts liquor wholesaler, United Liquors, LLC (“United”). Beam purchased the right to *259 produce, market, promote, distribute and sell the Skinnygirl Margarita from Skinny Girl Cocktails, LLC (“SGC”), a company formed by the brand’s celebrity creator (Bethenny Frankel) and her business associate (David Kanbar). Prior to this March 2011 sale, SGC utilized a Florida-based liquor distributor named Palm Bay International (“Palm Bay”) to distribute the Skinny Girl Margarita to wholesalers nationwide, one of whom was United.
Shortly following the closing of the sale transaction, Beam notified United that Beam would be replacing it with another wholesaler to represent the Skinnygirl Margarita brand in Massachusetts. United thereupon petitioned the Commonwealth’s Alcoholic Beverages Control Commission (“ABCC” or the “Commission”) for relief pursuant to pertinent provisions of the Massachusetts Liquor Control Act (the “Act”), G.L.c. 138, Sec. 25E. Under Section 25E, a liquor supplier who has regularly sold a branded alcoholic beverage to a wholesaler for longer than six months may not refuse to sell that product to such wholesaler going forward without “good cause” as defined in the statute. United maintained that Palm Bay was sufficiently affiliated with Beam, its successor distributor, that the Section 25E obligations it owed to United should be carried forward and imputed to Beam. ABCC agreed, and issued a Memorandum and Order requiring Beam to continue selling Skinnygirl Margarita products to United.
Beam has sought judicial review of the Commission’s Order in accordance with the provisions of Mass. G.L.c. 30A, Sec. 14. Presented for decision is Beam’s Motion for Judgment on the Pleadings, opposed by both ABCC and United (as Intervenor).
FACTUAL BACKGROUND
ABCC decided United’s Section 25E Petition on the parties’ Cross Motions for Summary Decision.[1] The Commission’s decision thus rested entirely on its evaluation of pleadings, affidavits and documentary exhibits evidencing and describing the subject transactions, together with arguments presented by counsel in briefing during a hearing conducted on May 2, 2012. A review of the record presented to ABCC discloses virtually no material facts in dispute, and a brief summary of the relevant evidence follows.
Beam is a Delaware LLC engaged in the business of manufacturing and distributing through branded subsidiaries alcoholic beverages and spirits. United is a liquor wholesaler with a place of business in Brain-tree, Massachusetts.
In a written Asset Purchase Agreement dated March 17, 2011 (the “APA” or the “Agreement”), Beam purchased from SGC specified business assets associated with the production and sale of the Skinnygirl Margarita brand.[2] These assets included the manufacture, sale and distribution rights for the Skinnygirl Margarita and its related trademarks; all licenses, other intellectual properly rights, and selected contracts related to the Skinnygirl Margarita product line; as well as all product inventory, promotional materials and other tangible and intangible assets associated with the Skinnygirl Margarita. These purchased assets (the “Skinnygirl Brand Assets”) were sold by SGC to Beam in an arm’s-length transaction for “tens of millions of dollars,”[3] and included additional earn-out payments to SGC contingent upon future sales of Skinnygirl products.
Although the APA defined SGC as the sole “Seller” of the Skinnygirl Brand Assets, the Agreement itself was concurrently executed by a number of additional parties who were called upon to provide discrete transactional deliverables incident to the closing. These additional parties included product creator Bethenny Frankel and David Kanbar (the two principals of SGC) and their respective corporate entities, as well as Mark D. Taub and David S. Taub (shareholders and officers of Palm Bay). Each of these ancillary signatories was required to make certain representations and commit to certain indemnities as conditions of the asset sale from SGC to Beam.
The evidence presented to ABCC established that SGC retained no ownership rights or equity interest in the Skinnygirl Brand Assets transferred to Beam, and exercised no rights of control in such assets following the March 2011 sale. Of significance to the Commission, however, Beam did agree that, for a period of ten months post-closing, it would not modify the Skinnygirl Margarita formula without the approval of Bethenny Frankel, the brand’s creator and most prominent public spokesperson. Further to this provision, Frankel’s company, BB Endeavors, LLC, entered into an Endorsement Services Agreement with Beam. This contract obligated Frankel to provide promotional services and to furnish input in connection with the marketing and advertising of Skinnygirl’s brand and the development of new products. The contract additionally required Frankel to attend four Beam meetings per year to provide advice regarding Skinnygirl product development and branding. Beam executives publicly acknowledged that the APA transaction was more akin to an early stage venture capital investment than a conventional asset acquisition of a mature business, and that Frankel’s continuing involvement with the brand and access to the feedback of its consumers (at least during the transaction’s earn-out period) was an important driver of the deal.
Following the APA’s March 17, 2011 closing, and in accordance with the terms of the Agreement, Beam became the exclusive manufacturer and distributor of the Skinnygirl Margarita. Acting pursuant to these contractual rights, Beam promptly notified United that it henceforth would be utilizing the services of another Massachusetts wholesaler and would no longer sell the Skinnygirl Margarita to United. At that time, Beam informed United that it could continue to *260 sell down its existing product inventory until depleted, or Beam would repurchase it directly from United at cost. Prior to Beam’s acquisition of the Skinnygirl Brand Assets, United had purchased the Skinnygirl Margarita exclusively from Palm Bay, and had done so for well in excess of six months.
Until the asset sale to Beam, Palm Bay acquired Skinnygirl Margarita through a March 2010 Distributor Agreement with SGC. This was the sole source of United’s access to the product, and the decision by Beam to terminate its supplier arrangement with Palm Bay is what cut off Skinnygirl product flow to wholesalers like United. Significantly, although the APA provided for the assignment and transfer of numerous business contracts from SGC to Beam, SGC’s Distributor Agreement with Palm Bay was not among the contracts so assigned. To the contrary, this Distributor Agreement was specifically identified as an excluded asset, all obligations related to it identified as excluded liabilities not transferring to Beam as part of the sale.
Making unmistakably clear that the asset sale contemplated Beam’s complete displacement of Palm Bay as a supplier of Skinnygirl Margarita, the APA required, as a condition of the transaction, the execution and delivery of an agreement whereby Palm Bay committed to sell all of its Skinnygirl product inventory and related marketing and promotion materials to Beam. Palm Bay fulfilled this commitment by execution of an Inventory Purchase Agreement with Beam dated March 17, 2011. That agreement again recited that Beam was not, and would not by any means become, a party to the SGC/Palm Bay Distribution Agreement, and that Beam did not have and would not succeed to any obligations of SGC thereunder. The Inventory Purchase Agreement further provided that Palm Bay was an independent contractor, and not an employee, agent, partner or joint venturer of Beam, and that Palm Bay thus had no ownership or other interest in the Skinnygirl Brand Assets.
The undisputed evidence of record confirms that at no time either before the sale transaction or since did Palm Bay have any ownership interest in or corporate affiliation with Beam; and Beam, in turn, has at no time held any ownership interest in or other right to manage or control Palm Bay in respect to the Skinnygirl Brand Assets. Indeed, Palm Bay had not transacted business of any kind with Beam prior to the SGC/Beam sale, and Palm Bay has had no involvement whatsoever with the Skinnygirl Margarita since its divestment of all product-related inventory in accordance with the terms and conditions of the APA.
ABCC’S SUMMARY DECISION
Following a non-evidentiary hearing on the parties’ cross motions for summary decision, ABCC issued a Memorandum and Order dated May 22, 2013, granting United’s petition for Section 25E relief and directing Beam to continue selling Skinnygirl Margarita product to this wholesaler.[4] The Commission’s decision to impute to Beam Palm Bay’s Section 25E obligation of continued product sale to United rested upon two subsidiary determinations: (1) That there was a “continuing affiliation” between Beam and Palm Bay; and (2) That Beam’s true motive for entering into the APA was to improve marketing and maximize sales of the Skinnygirl Margarita in a manner intended to circumvent Palm Bay’s Section 25E obligation. These two grounds for decision, the first a conclusion of law and the second a finding of fact, are addressed below.
DISCUSSION STANDARDS OF REVIEW
The standard for judicial review of agency decisions under G.L.c. 30A, Section 14 is well settled. The Court may reverse, remand, or modify an agency decision “if it determines that the substantial rights of any party may have been prejudiced” because the decision is “unsupported by substantial evidence” or if the decision is “arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.” G.L.c. 30A, Sec. 14(7). More specifically, a Court may order relief from an agency decision that was (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the agency; (3) based upon an error of law; (4) made upon unlawful procedures; (5) unsupported by substantial evidence; (6) unwarranted by facts found by the Court on the record submitted or amplified where the Court is constitutionally required to make independent findings of fact; or (7) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. Id.
With respect to ABCC’s findings of fact, most critically its determination that the SGC/Beam APA was motivated by a desire to circumvent Palm Bay’s Section 25E obligation to wholesalers like United, such findings cannot stand unless they are “supported by substantial evidence, that is, such evidence as a reasonable mind might accept as adequate to support the agency’s conclusion.” Seagram Distillers Co. v. Alcoholic Beverages Control Commission, 401 Mass. 713, 721 (1988). Conversely, with respect to conclusions of law, and most particularly the Commission’s determination that a “continuing affiliation” between Palm Bay and Beam warranted the imputation of Section 25E’s continued sell duty from the former to the latter, such conclusions are subject to de novo review. See G.L.c. 30A, Sec. 14(8)(c). See also Brown-Forman v. Alcoholic Beverages Control Commission, 65 Mass.App.Ct. 498, 503-04 (2006) (“the question of agency becomes one of law in those instances where the relationship is found to exist on the basis of undisputed facts or unambiguous written documents”); Gordon & Son v. Alcoholic Beverages Control Commission, 371 Mass. 584, 589 (1976) (ultimate responsibility for interpreting provisions of G.L.c. 138 rests with Court, not Commission).
*261 Although the Court acknowledges that the Commission’s “experience, technical competence, specialized knowledge and discretionary authority” are entitled to “due weight,” this principle is “one of deference, not abdication.” Brown-Forman, 65 Mass.App.Ct. at 503 (quoting Leopoldstadt, Inc. v. Commissioner of Div. of Health Care Finance & Policy, 436 Mass. 80, 91 (2002). Accord Arnone v. Commissioner of Dep’t of Social Services, 43 Mass.App.Ct. 33, 34 (1997) (“[t]he approach is one of judicial deference and restraint, not abdication”). In this regard, no deference is owed to analysis of the Commission falling outside the purview of its institutional expertise. Brown-Forman, 65 Mass.App.Ct. at 504 (holding non-deferential review warranted because “the commission drew no inferences from the unambiguous agreement other than its ultimate finding, which, no matter how couched, is in fact a conclusion of law that an agency relationship existed”).
ANALYSIS
Applying the foregoing standards to the case at bar, and mindful of the restraint appropriate to judicial review in these precincts, the Court is compelled to conclude that Beam’s substantial rights have been violated by a decision of ABCC supported by neither substantial evidence nor a proper application of the governing law.
1. The Statutory Framework
The Massachusetts Liquor Control Act prohibits the manufacture, sale and distribution of alcoholic beverages unless authorized by the statute. G.L.c. 138, Sec. 2. The Act adopts a familiar three-tier structure, in which approved manufacturers or suppliers sell alcoholic beverages to licensed wholesalers who, in turn, distribute the product to retailers for ultimate sale to consumers. See G.L.c. 138, Secs. 12, 15, 18, 18B, 19; Heublein v. Capital Distributing Co., 434 Mass. 698, 699 (2001). The Act contains numerous provisions intended to protect the integrity of this three-tier structure, including several designed to “counteract a tendency toward vertical integration in the liquor distribution industry.. . and to redress economic imbalances in the relationship of wholesalers and their suppliers.” Pastene Wine & Spirits Co. v. Alcoholic Beverages Control Commission, 401 Mass. 612, 618-19 (1988) (internal citations and quotations omitted). Accord Seagram Distillers Co., 401 Mass. at 716. Section 25E of the Act is one such provision, and its application by ABCC lies at the center of the parties’ current dispute.
Section 25E of the Act protects established wholesalers (such as United) by preventing manufacturers or suppliers from discontinuing the sale of alcoholic beverages to them without good cause. Section 25E thus states:
It shall be an unfair trade practice and therefore unlawful for any manufacturer, winegrower, farmer-brewer, importer or wholesaler of any alcoholic beverages, to refuse to sell, except for good cause shown, any item having a brand name to any licensed wholesaler to whom such manufacturer, winegrower, farmer-brewer, importer or wholesaler has made regular sales of such brand item during a period of six months preceding any refusal to sell.
G.L.c. 138, Sec. 25E.
In the present case, there is no dispute that, prior to the Commission’s Pre-Hearing Order, Beam made no such sales of Skinnygirl Margarita to United.[5] By its express terms, therefore, Section 25E’s continuing-sell obligation did not attach to Beam. See Pastene Wine & Spirits, supra at 618 (“The ABCC found . . . that M.H. U.S.A. made no direct sales to Pastene. Because Section 25E applies only if a supplier refusing to sell had previously sold to the wholesaler refused, M.H. U.S.A. itself created no Section 20E obligations to Pastene”).
Massachusetts appellate courts, however, have held that, in certain circumstances, the Commission may “impute” the Section 25E sell obligation of a former supplier to a succeeding supplier. But the Commission may only do so where the successor supplier has a “continuing affiliation or agency relationship” with its predecessor, see Heublein, 434 Mass. at 706; Brown-Forman, 65 Mass.App.Ct. at 500, or where the Commission otherwise determines that the successor supplier has undertaken a deliberate attempt to evade the obligations of Section 25E. See Heublein, 434 Mass. at 704 and n. 11; Brown-Forman, 65 Mass.App.Ct. at 500 (“The rationale for imposing obligations under Section 25E is particularly compelling where the commission finds that a transfer of distribution rights was undertaken primarily for the purpose of evading those obligations imposed by the statute”).
In the case at bar, United argued and ABCC found both that Beam had a “continuing affiliation” with Palm Bay pre-and post-APA, and that Beam’s motivation in pursuing and structuring the transaction as it did was to “circumvent the intent of Section 25E.”[6] These determinations of the Commission are addressed, in turn, below.
2. The Alleged Beam-Palm Bay Affiliation
In the first of its two companion rulings, ABCC concluded that predecessor supplier Palm Bay’s Section 25E sell obligation must be imputed to successor supplier Beam, on the ground that Palm Bay and Beam had a continuing affiliation post-APA that rendered such result consistent with the purposes of the Act. The Court does not agree, and believes that the Commission’s ruling rests upon a misreading of the statute and a confusion of the evidence that is probative of its intended protections.
It is, of course, settled that Section 25E obligations do not “run with the product . . . but only with the *262 manufacturer, winegrower, farmer-brewer, importer or wholesaler. If the legislature intended the obligation to run with the product, it would have said it.” Heublein, 434 Mass, at 698 (approving Commission declaration to this effect) (citations and quotations omitted). It is thus the general rule that “a supplier is not obligated under Section 25E to continue to make sales to those wholesalers with whom an unaffiliated predecessor did business.” Brown-Forman, 65 Mass.App.Ct. at 499. This principle has been applied consistently in the few reported decisions by Massachusetts courts, confirming that purchasers of liquor businesses are not ordinarily saddled with the Section 25E restrictions of either their sellers or those through whom their sellers distributed product. See, e.g., Heublein, 434 Mass, at 701-02 (holding that supplier who acquired all assets and operations related to manufacture and sale of product in arm’s-length transaction did not succeed to predecessor supplier’s Section 25E obligations: “a former supplier’s obligations under Section 25E to continue to sell its product to its wholesalers is not imputed to a successor supplier who obtains ownership of the product through an arm’s length asset acquisition”); Pastene Wine & Spirits, 401 Mass, at 619 (alcoholic beverage producer who acquired and liquidated its independent importer-supplier and began directly distributing its product did not succeed to importer’s Section 25E obligations: ‘To rule that a new supplier inherits the Section 25E obligations of a prior, now non-existent supplier, where the former supplier was acquired and liquidated for reasons unrelated to the circumvention of Section 25E, would extend Section 25E beyond its intended scope and generate inequities against suppliers”) (quotation omitted); Charles E. Gilman & Sons v. Alcoholic Beverages Control Commission, 61 Mass.App.Ct. 916, 917 (2004) (rescript) (affirming summary decision that alcoholic beverages producer that purchased certain brands of gin and scotch pursuant to FTC-ordered divestiture did not thereby become subject to brands’ suppliers’ Section 25E obligations: “a successor supplier of alcoholic beverages does not become subject to Section 25E where the acquisition of the product assets and their distribution rights were made at arm’s length and there was no evidence ... of any agency relationship or continuing affiliation between [the seller and the purchaser of the assets] following the completion of the sale . . .”) (quotation omitted).[7]
There is a corollary to this general principle, referenced in the foregoing decisions and invoked by ABCC in its ruling, pursuant to which Section 25E obligations will be imputed to an asset buyer in order “to prevent evasions of the protections intended under the statute.” Charles E. Gilman & Sons, 61 Mass.App.Ct. at 918. All parties agreed at oral argument that this exception is designed to foreclose extinguishment of the Section 25E duty through corporate shell-games undertaken with evasion as the principal objective, and requires the Commission to conclude, based on substantial evidence, that the asset buyer and predecessor supplier enjoyed a “continuing affiliation.” See Heublein, 434 Mass, at 706. Although there is no settled definition of “continuing affiliation” for these purposes, the prevailing thinking that the undersigned discerns in the reported cases is that the standard is met when either predecessor and successor have an agency relationship or when successor acquires predecessor’s rights by contractual assignment or through joint venture. See, e.g., Heublein v. Alcoholic Beverages Control Commission, 30 Mass.App.Ct. 611, 614-16 (1991) (upholding imputation of Section 25E obligations to new supplier after noting that previous supplier was linked to it financially by a joint venture). See also Pastene Wine & Spirits, 401 Mass. at 612 and n.5 (distinguishing ABCC decisions imputing Section 25E obligations, because “there is no finding of an agency relationship between [successor and predecessor suppliers], and no finding that there was an assignment of the rights to distribute products”).[8]
In the present case, the evidence is undisputed that Beam did not acquire rights of product distribution by contractual assignment from, or through any sort of joint venture with, Palm Bay. To the contrary, Beam and Palm Bay are linked only by an Inventory Purchase Agreement that states explicitly that Beam was not (and would not become) a party to Palm Bay’s Distribution Agreement with SGC (“by assumption or otherwise”), and that Palm Bay was an independent contractor (and “not an employee, joint venture[r], agent or partner” of Beam). This was consistent with SGC and Beam’s express exclusion of the Distribution Agreement (by which Palm Bay obtained all of its rights to purchase and distribute Skinnygirl Margarita) from the assets being assigned by SGC to Beam, as well as the recitation in the APA that Beam was taking on no obligations or liabilities arising out of or related to Palm Bay’s Distribution Agreement. In these circumstances, and neither ABCC nor United have suggested otherwise, there can be no doubt that Beam and Palm Bay were never parties to the sort of joint venture or assignment of rights agreement such as would allow one to be treated as the other for purposes of Section 25E. See Brown-Forman, 65 Mass.App.Ct. at 508.
As for an agency relationship between Beam and Palm Bay, which ABCC did not find in its administrative decision[9] but which United now argues to exist, the Court is unable to divine how any reasonable construction of the evidence permits such an inference. “An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf of and for the benefit of the principal, and subject to the principal’s control.” Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000). The Restatement (Second) of Agency (1958) identifies the existence of a fiduciary duty from agent to principal regarding matters within the scope of the agency, the power of the agent to alter legal relationships *263 between the principal and third parties, and the right of the principal to control the agent’s conduct with respect to matters within the purview of the agency as essential characteristics of an agency relationship. Id. at Secs. 12-14. The evidence presented to ABCC at the hearing in this case met literally none of these requirements. Palm Bay at no time had any ownership interest in Beam, and Beam had no ownership interest in Palm Bay. Likewise, neither Beam nor Palm Bay had any right to direct, manage or control the operations of the other, either before or following the APA transaction. Indeed, these two entities had nothing whatsoever to do with one another prior to Beam’s asset acquisition from SGC; and, once Palm Bay sold its Skinnygirl product inventory to Beam in accordance with their inaugural/terminal Inventory Purchase Agreement, Palm Bay ceased to have any role at all in the distribution of Skinnygirl Margarita. In these circumstances, there is simply no basis for finding an agency relationship between Beam and Palm Bay.[10]
Lacking evidence of contractual assignment, joint venture or agency, and in the face of the normative rule that an acquirer of a branded product will not typically inherit the Section 25E duties of its seller or the seller’s suppliers, see ante, ABCC nevertheless determined that Palm Bay and Beam were parties to a “continuing affiliation” such as would allow for the imputation of these statutory obligations from predecessor to successor. The Commission’s reasoning is spare as to the grounds for its conclusion, and can thus be easily quoted in full:
In this present matter involving the Margaritas, the Commission found that Palm Bay obtained the distribution rights for the Margaritas and Skinny Girl Brands. The Commission also found above that the Principals of Palm Bay, David Taub and Marc Taub, are among the identified sellers to Beam according to the Asset Purchase Agreement dated March 17, 2011.
The Commission is also persuaded, and therefore finds, that there is a continuing affiliation between Messrs. Taub (the principals of Palm Bay who was the predecessor to Beam), Ms. Frankel and Mr. Kandar (the brand owners), and Beam. While SGC reserved to itself and did not assign any right, title and interest in the trademarks pertaining to alcoholic beverages, other than beer, it transferred to BBE [Frankel’s corporate entity] all of its right, title and interest in trademarks across the world, including the United States. Beam and BBE signed a trademark co-existence agreement that acknowledged that Beam would have only the non-exclusive right to use the Skinnygirl trademarks. Beam admitted through its employee and manager that the nature of this transaction was “more of a venture capital investment for [Beam]: high growth, early investment.” Beam admits that on the date of the closing and for ten months thereafter Frankel continued to be affiliated and involved with the Margaritas. Frankel’s control over the brand items continues for five years after the closing, a time period that includes the date of this decision, since Beam may not change without Frankel’s consent the formulation of the Margaritas, without violating the contract. This is a sufficient affiliation for the Commission to conclude that the sales made by Beam’s predecessor should be, and hereby are, imputed to Beam.
ABCC Memorandum and Order, at pp. 8-9.
With respect, the Court is unable to see any factual or legal basis in the record for a finding of continuing affiliation between Palm Bay and Beam regarding the distribution of Skinnygirl Margaritas, and the Commission’s conclusion to the contrary appears to reflect a disregard of basic principles of corporate law. Aspects of ABCC’s reasoning — in particular its references to which parties had control of intellectual property rights that were not part of the Skinnygirl Brand Assets purchased by Beam in the APA, and thus have nothing to do with the rights and restrictions that govern the Skinnygirl Margaritas — are difficult to grasp altogether. That said, ABCC’s finding appears to rest, in the first instance, on the fact that Palm Bay’s two principals (David and Marc Taub) were signatories to the APA by which Beam acquired its Skinnygirl distribution rights. This fact, however, cannot without more sustain the finding that Beam and Palm Bay had an affiliation prior to the sale transaction. Marc and David Taub did not purchase Skinnygirl Margaritas from SGC, did not sell Skinnygirl Margaritas to United, and had no legally cognizable role in the distribution of this product to any third party. Palm Bay did all of these things, and Palm Bay was not a party to the APA. That Marc and David Taub were shareholders and officers of Palm Bay did not permit ABCC to attribute Palm Bay’s Section 25E obligations to them personally for successor imputation purposes. “It is a basic tenet that a corporation is a legal entity distinct from its shareholders.” Seagram Distillers, 401 Mass, at 720. In the absence of any basis for piercing the corporate veil (and thereby equating the Taubs and Palm Bay for liability purposes, see Scott v. NG US 1, Inc., 450 Mass. 760, 766-67 (2008)) — and no such basis is apparent in the record — the Court “discern[s] no reason of policy or legislative intent in this case which would justify disregarding the corporate form.” Seagram Distillers, 401 Mass. at 713.[11]
The second half of ABCC’s affiliation reasoning is equally flawed. In its Memorandum and Order, the Commission attaches great significance to the fact that the APA invested Bethenny Frankel with aspects of product control for a period of time following the sale’s closing, and that the overall transaction contemplated a substantial ongoing role for Frankel in the marketing of Skinnygirl Margarita going forward. But *264 so what? Even if these facts constituted a basis for finding a continuing affiliation between Frankel and Beam, there is no evidence that would allow Frankel to be substituted for Palm Bay for Section 25E imputation purposes in this case. Neither Frankel nor BB Endeavors ever supplied Skinnygirl Margarita products to United; and, whatever her degree of control over the brand pre-and post-acquisition, there is no evidence that Frankel had any kind of legal or contractual connection to Palm Bay. This undisputed fact independently defeats a core element of ABCC’s decisional rationale.
The essence of the contrary conclusion reached by the Commission, and its supporting reasoning, is succinctly captured in its Opposition to Plaintiffs Motion for Judgment on the Pleadings. The Commission argues:
The first basis for the Commission’s Order was its conclusion that there is a continuing affiliation between the successor supplier of the Margarita, Beam, and the former supplier, Palm Bay. This conclusion necessarily required the Commission to reach two subsidiary conclusions: (1) that Palm Bay, which was not a party to the APA or sale, was affiliated with those parties that were — i.e., the Seller Parties; and (2) that the Seller Parties had a continuing affiliation with Beam after the sale closed.
ABCC’s Opposition, at pp. 10-11. ABCC and United then expend considerable energy in their submissions to the Court endeavoring to prove each of these two foundational propositions; but, in the process, they neglect to come to terms with a serious flaw in the syllogism. Palm Bay may have had a connection to SGC and its selling affiliates, including Bethenny Frankel, through the commitments made by the company’s two principals (Marc and David Taub) in the APA[12] and Frankel may thereafter have had an ongoing connection to Beam through the (durationally defined) rights of product control that she retained post-acquisition. But, once again, the fact that Frankel had an arguable affiliation with each of these two parties will not, by any sort of transitive property, supply the connective tissue for an affiliation between Palm Bay and Beam. Business relationships like these are not, after all, marriages that confer instant relational status of the in-law variety on remote parties that have otherwise had no dealings. If statutory liabilities could pass between businesses in such circumstances, corporate law as we know it would cease to exist.[13]
The simple fact of the matter is that the evidence in this case permits no rational finding of any kind of affiliation between Palm Bay and Beam, the only two parties whose connectedness would allow for the imputation of Section 25E obligations ordered by ABCC. The Commission’s determination of such an affiliation on the basis of the fact that the Taubs and Frankel were signatories to the APA, and Frankel thereafter maintained an active involvement with the promotion of Skinnygirl’s brand, reflects an error of law that must be reversed.
3. Beam’s Alleged Motivation to Circumvent Section 25E
ABCC’s alternate conclusion that the conduct of Beam in this case displays an impermissible intent to evade and circumvent the intended protections of G.L.c. 138, Sec. 25E is likewise unsupported by the evidence.[14] Even granting deference to this factual finding regarding Beam’s putative motive for entering into the APA, the Court is unable to identify any substantial evidence on which the Commission’s conclusion can be sustained. Once again, ABCC’s reasoning in its Memorandum and Order is brief, so the Court will quote it in full (omitting only the agency’s summary of its own prior decisions in the area). The Commission wrote:
In this proceeding regarding the Margaritas, the Commission is persuaded, and therefore finds, based on the documents submitted in support of the summary decision motion by Beam that the motivation for this transaction was a business strategy to obtain better marketing and increase sales whereby Beam would obtain the additional business of the first prominent product in an emerging sub-category of the market and the desire to maximize efficiencies in the sales of that product.
Where the Commission finds that the intent of a merger was to develop better marketing of the product by subsidiaries, the Commission found, and the Court upheld the finding that the intent of the parties was to circumvent Section 25E obligations.
ABCC Memorandum and Order, at p. 8.
The Court has studied the above finding with care, but remains at a loss to locate the evidentiary basis for concluding that Beam’s intent in this case was to circumvent Section 25E.[15] As a threshold matter, the underlying determinations of fact — to the effect that Beam was pursuing a “business strategy to obtain better marketing and increase sales” in an emerging product segment, and to maximize efficiencies in connection with same — find rather scant support in the record. That aside, even conceding such business motivations will not rationally permit the inference drawn by ABCC that Beam’s primary objective was to evade the purposes and provisions of Section 25E. What the Commission identifies as the goals which evidence Beam’s nefarious design (viz., better marketing, improved efficiencies, and increased sales) could fairly be said to characterize the aspirations of all businesses that acquire product lines. There is no basis in the record for tarring such unexceptional motivations with the brush of Section 25E evasion, and neither ABCC in its Memorandum and Order nor *265 United in opposing Beam’s present motion have identified any.
In the final analysis, the Court is unable to distinguish the present case from Heublein, where the SJC acknowledged that a successor supplier’s acquisition of particular branded wine assets in order “to help consolidate its position in the wine industry, increase its market share and strengthen its position with distributors” was “implicitly not for the purpose of circumventing Section 25E.” Heublein, 434 Mass, at 704 n. 11. The Court likewise noted with approval the conclusion of the trial judge that “[sleeking to avoid obligations under Section 25E, if any exist, is quite different [from] acquiring distribution rights for the specific purpose of circumventing Section 25E . . . [T]here are legitimate business reasons for a new supplier, who is not an agent of or affiliated with a previous supplier, to . . . structur[e] the execution of an arm’s-length acquisition to ensure” the right to modify its wholesaler relationships, and doing so “did not convert the purpose of the transaction to one intended to circumvent Section 25E.” Id. at 704.[16]
As in Heublein, the present case involves a manufacturer and supplier of alcoholic beverages that, having spent tens of millions of dollars to acquire Skinnygirl Margarita, wanted to consolidate the brand’s operation and sell to a different wholesaler in Massachusetts. This entailed displacing Palm Bay as the product’s distributor, an unmistakable element of Beam’s larger business design in acquiring the Skinnygirl Brand Assets. But these unobjectionable motivations acknowledged, there is nothing in the record to sustain the inference drawn by ABCC that Beam’s primary purpose in entering into an arm’s-length APA was to play a corporate shell game to extinguish United’s Section 25E right to continued product sales from Palm Bay. The Commission’s contrary finding is unsupported by substantial evidence, and must be set aside.[17]
CONCLUSION AND ORDER
For all the foregoing reasons, Beam Spirits & Wine, LLC’s Motion for Judgment on the Pleadings is ALLOWED.

Such motions are the administrative analogue to motions for summary judgment under Mass.R.Civ.P. 56(c). See 801 CMR 1.01(7)(h) (motion for summary decision can be made when “a Party is of the opinion there is no genuine issue of fact relating to all or part of a claim or defense and he is entitled to prevail as a matter of law”).

The Skinnygirl Margarita is a low-calorie, all-natural prepared margarita marketed to people concerned with calories and product ingredients but who still want to consume a cocktail.

The record reveals only that the purchase price was a “mid-eight figure number” consisting of “tens of millions of dollars” but “less than $100,000,000.”

The Commission had previously issued a Notice of Filing and Pre-Hearing Order under G.L.c. 138, Section 25E, pursuant to which it compelled Beam to continue selling Skinnygirl Margarita to United in the ordinary course pending disposition of United’s Section 25E challenge on its merits.

It is likewise undisputed that Beam lacked any statutory “good cause” for its decision to refuse selling to United following Beam’s acquisition of the Skinnygirl Brand Assets.

The Court agrees with Beam’s assertion that the Commission’s precise findings are not a model of clarity or precision, but nevertheless believes that this represents a fair summary of the agency’s intended conclusions.

Tellingly, the courts have adopted a vocabulary in applying Section 25E which suggests that mere contractual “connections” or business “dealings” will fall short of the kind of “affiliation” required for imputation purposes. The reasoning of ABCC in the present case, however, see infra, fails to appreciate this important distinction.

The Court notes that ABCC itself, in its Memorandum and Order, explicitly acknowledges these as the basic factual boundaries for Section 25E imputation. See Commission’s Memorandum and Order, at p. 9.

Indeed, although ABCC noted that United had advanced this as an argument in its Motion for Summary Decision, the Commission made no finding of an agency relationship between Beam and Palm Bay.

United’s argument that Beam and Palm Bay can be considered agents of the same principal — Bethenny Frankel, who controlled the brand prior to the APA and, to a much more limited extent, for a period of months thereafter — defies understanding. First, it is doubtful that this proposition is established as a factual matter. The record discloses that Frankel had only limited rights (and for a relatively brief time period) to control the formula for Skinnygirl Margarita after the closing of the APA. She had no right to approve or veto Beam’s sale of the product to down-stream customers, and Beam’s post-acquisition distribution rights were plenary. No agency relationship for purposes of Section 25E can be inferred in such circumstances. See Brown-Forman, 65 Mass.App.Ct. at 507-08. More to the point, even if Palm Bay and Beam were, at different points in time, agents of Frankel, that would not make them agents of one another in either logic or law. United cites no authority for such a contention.

One might argue that, inasmuch as the entire imputation doctrine entails the post-acquisition equating of affiliated parties with their corporate counterparts for purposes of Section 25E, a similar kind of disregard of the corporate form should apply to the examination of pre-transaction parties. This, however, appears never to have been the analytical approach of courts confronting Section 25E claims, and for good reason. The rationale for looking beyond the corporate form post-acquisition when applying Section 25E is to give meaningful effect to the Legislature’s desire that the Act’s protective purposes not be thwarted by transactional shenanigans (e.g., a singular party that artfully changes its identity on paper in order to defeat the rights to continued product access of an economically less powerful wholesaler). This concern for deliberate evasion of the Act, however, is obviously not present in the pre-transaction context.

This premise, however, requires a disregarding of the corporate form that the Court is not prepared to endorse. See ante.

This principle likewise defeats United’s contention (advanced most clearly during oral argument) that a continuing affiliation between Palm Bay and Beam can be inferred by piggy-backing the distribution relationship that existed between a Frankel-led SGC and its wholesalers prior to 2009 onto the product and marketing connection between Frankel and Beam that existed post-acquisition. This hypothesis only further attenuates the required affiliation between Palm Bay and Beam, inasmuch as it effectively takes Palm Bay out of the equation altogether.

During the hearing on this motion, counsel for United came close to conceding the deficit of evidence regarding Beam’s purportedly impermissible motivations, commencing his argument with the acknowledgment that “continuing affiliation” was the principal ground upon which ABCC’s decision should be sustained.

The Court has likewise been unable to locate the court decision in Martignetti Grocery which ABCC cites as authority for its conclusion.

The Commission urges that Heublein is distinguished by the fact that, in the present case, Bethenny Frankel continued to have a substantial involvement with the subject product’s marketing' — an involvement that Beam sought to exploit for continued sales growth. The Court, however, does not regard such a distinction as analytically material. Selling parties with ongoing earn-out interests tied to the profits of a divested business commonly involve themselves in the affairs of the business post-acquisition, and no logical inference of an intent to thwart Section 25E can be drawn from such fact in the case at bar.

The Court has considered United’s contention that the proper remedy in these circumstances would be to remand the matter for a full evidentiary hearing. The parties having cross moved for summary decision, however, after a full period of discovery, and having thereby advised the Court that no factual issues were in genuine dispute and that the case could be decided on a paper record, there would seem to be little purpose in prolonging the litigation in such a manner.